Oberg Manufacturing Co., Inc., Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued November 13, 1984, before Judges WIL-
LIAMS, JR., BARRY and COLINS, sitting as a panel of
three.

*Melvin L. Moser, Jr., Buchanan Ingersoll P.C.,* for
petitioner.

*Paul S. Roeder,* Deputy Attorney General, with
him, *LeRoy S. Zimmerman,* Attorney General, for re-
spondent.

OPINION BY JUDGE COLINS, January 24, 1985:

Oberg Manufacturing Company, Inc. (petitioner)
appeals from a decision of the Board of Finance and
Revenue (Board), which assessed a use tax deficiency
against Oberg's business activities for the period from
January 1, 1974, to September 30, 1977. The assess-
ment was based upon a determination that the en-
gineering supplies and materials in question were not

covered by the manufacturing exclusion to the use tax found at Section 7201(o)(4)(B)(i) of the Tax Reform Code of 1971 (Tax Code).[1] We affirm the order of the Board.

The parties have filed a lengthy Stipulation of Facts from which we have distilled the following:

2. After an audit of Petitioner's books, covering the period from January 1, 1974, through September 30, 1977, the Bureau of Sales and Use Tax, Department of Revenue, Commonwealth of Pennsylvania, issued to Petitioner its use tax assessment No. A-81343, dated December 27, 1977, (hereinafter called "Assessment") . . . .

3. . . . [T]he assessment . . . [represents] use tax on purchases of tangible personal property, designated and described by the auditing agent in his report as engineering supplies and materials, all of which were used by Petitioner in its engineering department "to prepare or produce work 'prints'."

5. On January 26, 1978, a Petitioner filed a timely Notice of Intention to File a Petition for Reassessment of the Assessment with the Board of Review of the Bureau of Sales and Use Tax. On February 22, 1978, the Department of Revenue mailed to Petitioner its Acknowledgment of Appeal.

6. On or before March 22, 1978, Petitioner filed a timely Petition for Reassessment with the Board of Appeals in the Department of Revenue, requesting that the portion of the assessment which related to the assessment of use tax

[1] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §7201(o) (4)-(B) (i).

on engineering supplies or materials be eliminated from the assessment alleging that those items were directly used in and part of its manufacturing operations.

8. The Board of Appeals rendered its decision on Petitioner's Petition for Reassessment on November 16, 1978, affirming the assessment but abating all penalties assessed against Petitioner. . . .

9. On or about February 2, 1979, the Department of Revenue issued its Notice of Reassessment of use tax in the amount of Two Thousand Six Hundred Seventy-Four and 65/100 ($2,-674.65) Dollars, plus interest in the amount of Seven Hundred Twenty-Five and 85/100 ($725.85) Dollars (as of February 15, 1979), for a total assessment of Three Thousand Four Hundred and 50/100 ($3,400.50) Dollars.

10. On or about January 11, 1979, Petitioner filed a Petition for Review of the decision of the Board of Appeals of the Department of Revenue with the Board of Finance and Revenue.

12. On June 29, 1979, notice was mailed to petitioner that the Board of Finance and Revenue had sustained the decision of the Board of Appeals of the Department of Revenue.

14. Petitioner is primarily in the business of making custom-made carbide progressive dies for the metal stamping industry.

64. If the Court finds that all of the [subject] materials . . . are taxable, the decision and order of the Board of Finance and Revenue sustaining the use tax at Two Thousand Six Hundred Seventy-Four and 65/100 ($2,674.65) Dollars, plus appropriate interest should be affirmed.

Section 7201(o)(4)(B)(i), as to use tax, excludes from tax the use of tangible personal property used directly in the manufacture of personal property. " 'Manufacture' . . . shall include but [is] not limited to— . . . [e]very operation commencing with the first production stage and ending with the completion of personal property having the physical qualities . . . which it has when transferred by the manufacturing to another. . . ."[2] Furthermore,

> [w]here tangible personal property or services are utilized for purposes constituting a "use," as herein defined, and for purposes excluded from the definition of "use," it shall be presumed that such property or services are utilized for purposes constituting a "sale at retail" and subject to tax unless the user thereof proves to the department that the *predominant* purposes for which such property or services are utilized do not constitute a "sale at retail." (Emphasis added.)[3]

Therefore, in order for tangible personal property to be excluded from the use tax the property must be used by the manufacturer (1) during the production stages, (2) directly; and (3) predominantly in manufacturing.

The use tax in the instant case was assessed on blueprint cabinets and bases, tracing paper, drawing pencils, erasing fluid, erasers, paper, ink, drafting machines, polyester chart material, chart lettering, pen points, drafting paper, pens and similar drawing materials. These supplies are used to prepare design drawings, prints, tapes and charts. The preparation of these drawings and prints represents a preliminary

---

[2] 72 P.S. §7201(c).
[3] 72 P.S. §7201(o)(5).

stage to the manufacturing process. The assessed engineering supplies were used prior to the commencement of the first production stage. In addition, these items were not predominantly used, since they were not used by petitioner more than 50% of the time directly in manufacturing or processing operations.[4] The record indicates that the prints and drawings were also used for ordering and marketing purposes; therefore, their use is not direct since the Tax Code limits direct use to production operations and not to pre-production activities.

Petitioner secondarily argues that it qualifies for the printing exemption contained in 61 Pa. Code §32.-36(a), which states:

(a) *The printing exemption.* Printing and related businesses shall be exempt from sales and use taxes in accordance with the following:

(1) *Printing as manufacturing.* Printing, when engaged in as a business, is included in manufacturing under the act; and all regulations applicable to manufacturers shall be, therefore, also applicable to printers. Equipment; machinery-including components of a computer system; and accessories, parts, and supplies therefor which are used predominantly and directly in printing shall be exempt from

---

[4] 61 Pa. Code §32.32(a)(2) states:

(2) *Property directly used; pre-dominant use.* The purchase or use by a manufacturer or processor of property in the following categories, when predominantly used directly in manufacturing or processing, shall be exempt from tax, Where a single unit of such property is put to use in two different activities, one of which is a direct use and the other of which is not, the property shall not be exempt from tax unless the manufacturer or processor makes use of the property more than 50% of the time directly in manufacturing or processing operations.

tax. Beginning March 4, 1971, foundations for equipment and machinery became subject to tax and remained taxable until February 9, 1981, the effective date of the act of December 9, 1980 (P.L. 1136, amended 1981 which 1981, the effective date of the act of December 9, 1980 (P.L. 1136, section 201(k) and (o) of the Tax Reform Code of 1971 (72 P.S. §7201(k) and (o)). Effective February 7, 1981, foundations used to support equipment, machinery, and parts used directly in printing shall be exempt from tax. Reference should be made to §32.32 of this title (relating to manufacturing; processing).

(2) *Related businesses.* The exemption also applies to those businesses related to the printing industry which, although not themselves printing are "manufacturing" within the meaning of section 201(c) of the Tax Reform Code of 1971 (72 P.S. §7201(c)). Such businesses include trade binding, engraving, typography, plate making, color separating, stereotyping, electrotyping, gravure cylinder making, photographic processing, and the business of manufacturing page mechanicals, camera ready copy, image carriers, or related or component items for sale to printers for use in their printing operations.

As authority for this contention, petitioner cites *Westinghouse Electric Corporation v. Commonwealth,* 53 Pa. Commonwealth Ct. 116, 417 A.2d 800 (1980). However, the previously cited regulation was enacted subsequent to our decision in *Westinghouse.* Furthermore, the factual matrix here is substantially different. Petitioner prepares numerous prints and drawings, but solely in connection with the later manufac-

ture of the dies. In *Westinghouse,* the petitioner ran a printing operation with 350 employees, including typesetters, composers, proofreaders and pressman. This printing division produced sales brochures, manuals, reports, catalogs, business forms, as well as other promotional materials. Certainly these activities differ greatly from the limited reproduction of blueprints and drawings.

For the aforementioned reasons, we conclude that the materials assessed here do not fall within either the manufacturing exclusion or the printing exemption to the use tax.

Accordingly, we affirm the decision of the Board of Finance and Revenue. Since the Board found that petitioner acted without negligence or intent to defraud the Commonwealth, the Board's decision to abate any penalty charges is also affirmed.

ORDER

AND Now, January 24, 1985, the decision of the Board of Finance and Revenue, Docket No. RST-3055, dated June 29, 1979, is hereby affirmed.

Unless exceptions are filed within 30 days of this order, judgment is entered in favor of the Commonwealth of Pennsylvania in the amount of $2,674.65, plus appropriate interest.