530 A.2d 994

Bruce & Merrilees Electric Company, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Bruce & Merrilees Electric Company, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Bruce & Merrilees Electric Company, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued April 23, 1987, before Judges COLINS and PALLADINO, and Senior Judge NARICK, sitting as a panel of three.

*Keith A. Hunter, Mahler & Shaffer,* for petitioner.

*Paul S. Roeder,* Deputy Attorney General, with him, *John G. Knorr, III,* Deputy Attorney General, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE COLINS, September 2, 1987:

Bruce & Merrilees Electric Company (taxpayer), an electrical equipment supplier and construction contractor, challenges orders of the Board of Finance and Revenue (Board) which modified or sustained decisions of the Board of Appeals pursuant to three assessments issued by the Commonwealth of Pennsylvania, Department of Revenue (Commonwealth) for the payment of additional sales and use tax accruing during the audit periods January 1, 1970 through December 31, 1972 (No. 897 C. D. 1980), January 1, 1973 through February 28, 1977 (No. 1331 C. D. 1980), and January 1, 1980 through June 30, 1983 (No. 182 C. D. 1985). These appeals have been consolidated for our consideration. Because of the evolution of the law over the thirteen years covering these assessments, we will consider them individually and in chronological sequence.

Appeals to this Court from the Board are *de novo*. In accordance with Pa. R.A.P. No. 1571(f), the taxpayer and the Commonwealth have entered into and filed a Partial Stipulation of Facts for each of the three assessments which we accept and adopt, in pertinent part, as findings of fact for the purposes of this appeal. From those stipulations and from our review of the evidence presented at a hearing on March 3, 1986, we distill the following Findings of Fact:

FINDINGS OF FACT

1. Taxpayer is Bruce and Merrilees Electric Company, a duly organized Pennsylvania corporation engaged in business as an electrical construction contractor and electrical equipment supplier.

2. During the first assessment period here at issue, January 1, 1970 through December 31, 1972 (No. 897 C. D. 1980 or first audit), the Commonwealth conducted a complete audit of taxpayer's books and records and issued the following assessment (No. A-66495):

| | |
|---|---|
| Sales Tax | $ 0.00 |
| Use Tax | 13,338.89 |
| Interest to 5-15-73 | 1,927.45 |
| Penalty | 943.12 |
| Total due the Commonwealth | $16,209.46 |

3. Taxpayer conceded use tax in the amount of $417.18 as due and owing but filed an appeal with the Board of Appeals, contesting the remainder of the use tax assessed.

4. The Board of Appeals, after a hearing, issued a decision and order abating the penalties but sustaining the remainder of the assessment.

5. Taxpayer filed a timely Petition for Review with the Board of Finance and Revenue, which Board issued

a decision reducing the use tax assessment to $6,762.39 plus appropriate interest.

6. Taxpayer filed a timely Petition for Review with this Court and the matter was docketed at No. 897 C. D. 1980.

7. The Commonwealth conducted a complete audit of taxpayer's books and records for the period of January 1, 1973 to February 28, 1977 (No. 1331 C. D. 1980 or second audit), and issued the following assessment (No. A-80162):

| Sales Tax | $ 3,717.42 |
| Use Tax | 97,697.53 |
| Interest due to 7-15-77 | 14,843.26 |
| Penalty | 14,419.79 |
| Total due Commonwealth | $130,678.00 |

8. Upon taxpayer's timely Petition for Reassessment, the Board of Appeals sustained the tax assessment, with interest, but abated the penalties imposed.

9. Upon further appeal, the Board of Finance and Revenue reduced the assessment as follows:

| Sales Tax | $ 2,459.11 |
| Use Tax | 26,001.16 |
| Total due Commonwealth plus appropriate interest | $28,460.27 |

10. The taxpayer conceded $2,824.34 of the sales and use tax assessment, collectively, as due and owing, but filed a timely Petition for Review with this Court contesting the remaining assessed amounts, and the matter was docketed at No. 1331 C. D. 1980.

11. The Commonwealth conducted a complete audit of taxpayer's books and records pertaining to construction activities for the period of January 1, 1980

through June 30, 1983 (No. 182 C. D. 1985 or third audit) and a test audit of retail sales for this same period and issued the following assessment (No. A-88900):

| | |
|---|---|
| Sales Tax | $ 49,237.53 |
| Use Tax | 46,299.59 |
| Interest to 3-29-84 | 21,786.47 |
| Penalty | 13,046.61 |
| Total due Commonwealth | $130,370.20 |

12. Taxpayer timely appealed the remaining assessment to the Board of Appeals and that Board, after a hearing, sustained the assessment in its entirety.

13. Upon further appeal, the Board of Finance and Revenue, in turn, sustained the assessment in its entirety.

14. Taxpayer conceded that $4,917.23 of the sales tax and $6,218.30 of the use tax assessed was due and owing to the Commonwealth.

15. Taxpayer filed a timely Petition for Review with this Court and the matter was docketed at No. 182 C. D. 1985.

16. Materials utilized by taxpayer in constructing concrete elevation and stabilization pads as foundations for electrical equipment lose their identity as tangible personal property, become a permanent part of the realty and are thus subject to use tax.

## Discussion

In its dual capacity as a retail electrical materials supplier and an electrical contractor, taxpayer's activities are subject to "sales tax" upon "each separate sale at retail of tangible personal property" and "use tax" upon "the use . . . of tangible personal property purchased at retail" in the performance of construction contracts,

pursuant to Sections 202(a) and (b) of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §7202(a) and (b),[1] respectively.

In this multi-faceted appeal, taxpayer primarily challenges the Commonwealth's assessment of: (1) use tax upon materials and supplies incorporated into concrete elevation and stabilization pads comprising foundations for electrical equipment such as traffic lights and transformers; (2) use tax upon certain tools and safety equipment utilized by taxpayer in the performance of its construction contracts; and (3) sales tax upon taxpayer's retail sales of electrical supplies and upon certain electrical transformers, substations and capacitors installed by taxpayer pursuant to contract.

In our consideration of taxpayer's challenges, we are guided by our Supreme Court's decision in *Commonwealth v. Beck Electric Construction, Inc.,* 485 Pa. 604, 403 A.2d 553 (1979). As in the matter *sub judice, Beck* involved a taxpayer whose business acitivites included both sales and installations of electrical equipment. The Court considered the tax consequences of such activities in light of the then pertinent Regulation 150, now embodied in 61 Pa. Code §§31.11-.16, which distinguished construction activities from sales activities as follows:

> Property which does not become a permanent part of the real estate . . . is deemed to be sold by the person who furnishes and installs it. . . . Such property does not lose its identity by reason of its installation, and is not a permanent

---

[1] Sections 202(a) and (b) of the Code supplanted comparable provisions imposing sales and use tax in the Tax Act of 1973 for Education, Act of March 6, 1956, P.L. (1955) 1228, *as amended* by the Act of May 29, 1963, P.L. 49, 72 P.S. §3403-201(a) and (b).

part of the building or structure in which it is installed.

The Court then determined that certain electrical equipment, which included a transformer, switchgear and an electronic clock system, is easily disassociated from the realty after installation and retains its identity as tangible personal property. Such items, the Court reasoned, must be deemed to have been *sold* by the contractor rather than *used* in the performance of its construction contract, *Id.* at 612, 403 A.2d at 557, and are properly subject to sales tax rather than use tax.

The first and second audits in the instant matter preceded *Beck;* the third audit post-dated that decision. The Commonwealth now submits that the Board substantially reduced the use tax assessments in the earlier audits in light of *Beck;* that is, the Board characterized as tangible personal property certain equipment previously deemed by the auditor to have been realty. The Commonwealth posits that the third audit comported with *Beck* in both preparation and review. We will consider these assessments *seriatim.*

## NO. 897 C. D. 1980

The first assessment resulted from a complete review of taxpayer's construction contracting activity for the period January 1, 1970 through December 31, 1972.[2] Taxpayer challenges use tax[3] assessed in the amount of $6,762.39 upon materials used in the performance of its construction activities and characterized by the auditor as realty. Taxpayer focuses its argument

---

[2] A test audit of taxpayer's sales tax records was conducted and no deficiency was determined.

[3] Taxpayer concedes use tax as due and owing in the amount of $417.18 assessed upon natural gas, hand tools, and administrative supplies, as well as $54.60 on capital equipment.

upon assessed materials consisting of sand, gravel and concrete used in constructing concrete foundations for electrical equipment. It contends that these items retain their character as tangible personal property after construction and actually comprise integral parts of the equipment attached thereto. This argument is specious. Suffice it to say that taxpayer's representative testified that these foundations are constructed by pouring concrete into a form, may be removed after breaking them apart by jackhammer and are not reuseable. In accordance with the criteria established by *Beck*, these items are realty properly subject to use tax.

Alternatively, taxpayer contends that these foundations are excluded from tax by virtue of Section 201(o)(4)(B) of the Code, 72 P.S. §7201(o)(4)(B), pertaining to the definition of "use". We need not consider that particular statute at this juncture because that language was added to the Code by the Act of December 9, 1980, P.L. 1136, and is thus not relevant to the time period here at issue.

Our review of the statutory predecessor to Section 201 of the Code reveals no language purporting to exclude foundations from taxation. *See* Section 2(j) of the Selective Sales and Use Tax Act, Act of March 6, 1956. However, Section 201(o)(4)(B) of the Code was amended by the Act of September 9, 1971, and the following pertinent language was added:

And provided further, That the term 'use' shall not include—

(B) The use or consumption of tangible personal property, including but not limited to machinery and equipment and parts therefor, and supplies or the obtaining of services . . . directly in any of the operations of—

. . .

(iii) *The producing, delivering or rendering of a public utility service, or in constructing . . .*

*the facilities which are directly used in such ser-vice,* whether or not such facilities constitute real estate: Provided, however, 'real estate' shall not include buildings, *roads, foundations or similar facilities. . . .*

(Emphasis added and in original.)

Taxpayer has not suggested, nor has our review of the voluminous record disclosed, that these foundations were installed for a public utility, so as to implicate the above-cited statute. Moreover, it is difficult to discern from either taxpayer's brief or Petition for Review exactly which assessed items it now challenges. To the extent that taxpayer contests use tax assessed upon materials allegedly sold to entities exempt from tax pursuant to Section 237(c) of the Code, 72 P.S. §7237(c), we note that taxpayer failed to provide exemption certificates to the auditor or to the Board of Appeals[4] despite repeated requests to do so. Taxpayer has included numerous exemption certificates in the Stipulation of Facts but has made no attempt to correlate these certificates to any of the assessed transactions.

The burden is upon Taxpayer to prove that the tax was improperly assessed. *Ernest Renda Construction Co., Inc. v. Commonwealth,* 94 Pa. Commonwealth Ct. 608, 504 A.2d 1349 (1986); Section 236 of the Code, 72 P.S. §7236. We must conclude that taxpayer has not

---

[4] In its decision, the Board indicated that taxpayer provided no certificates of exemption in support of its claim that it had honored same in lieu of tax upon materials and equipment transferred. As the Board stated: "After request for information by the Examiner at the hearing and on two formal meetings with the [taxpayer] after the hearing . . . no certificates or any other information has been provided. [T]he Examiner notified the [taxpayer] that if no additional information was forthcoming, a determination would be made on the evidence present in its file . . . but [taxpayer] provided no additional information."

met this burden and we affirm the Board's assessment of use tax in the first audit.

## NO. 1331 C. D. 1980

The Commonwealth conducted a complete audit of taxpayer's construction activities and a test audit of sales transactions for the period January 1, 1973 through February 28, 1977, and determined sales and use tax deficiencies in the amount of $3,717.42 and $97,697.53, respectively, sums reduced by the Board, upon review, to $2,459.11 and $26,001.16, respectively.

Taxpayer now concedes $1,404.12 in sales tax as due and owing, but contests tax imposed upon sales of electrical items to various allegedly exempt entities. Its argument in support of this contention is two-pronged: first, that items sold to manufacturers were excluded from tax by Section 201(k) of the Code, 72 P.S. §7201(k), pertaining to the definition of "sale at retail," and second, assuming that these transactions were taxable, that its reliance upon blanket exemption certificates[5] from its purchasers relieved it of any tax liability.

On this record we are unable to evaluate whether Section 201(k) of the Code does indeed act to exclude these transactions from tax. That section pertinently provides as follows:

> The 'sale at retail' shall not include . . . (ii) such rendition of services or the transfer of tangible personal property including, but not limited to, machinery and equipment and parts therefor

---

[5] A sample blanket exemption certificate purportedly maintained on file by taxpayer read as follows:

> I CERTIFY That, unless I advise you to the contrary in writing, all property and services (purchased) (leased) hereunder is exempt because (insert applicable exemption reason from list on reverse side, and supply all required information and numbers, or certificate is void.)

and supplies to be used or consumed by the purchaser *directly in any of the operations of-*
   (A)  *The manufacture of personal property.*

. . .

72 P.S. §7201(k) (Emphasis added.)

Again, taxpayer has not delineated which items in the voluminous assessment it now specifically challenges. Moreover, it proffered no evidence demonstrating the manner in which any specific assessed item is "directly" used in "the manufacture of personal property" by its customers. Taxpayer's bare assertions to that effect will not sustain its burden of proving that the tax was improperly assessed.

We also reject taxpayer's second argument that its reliance upon blanket exemption certificates mediates against the assessment. Taxpayer presented no certificates of exemption to either the auditor or the Board of Appeals. Indeed, the Board of Appeals in its decision found as fact that "although [taxpayer] appeared at the hearing . . . no testimony or documentary evidence was presented into evidence to support [its] assertions." Taxpayer has included over 150 blanket certificates in the Stipulation of Facts submitted to this Court, but has made no attempt to correlate any of these certificates with any of the transactions at issue. The sheer volume of these documents, absent any effort on the part of taxpayer to organize them into a workable order, precludes our doing so.

We have previously determined that materials utilized by taxpayer in the construction of concrete foundations are properly deemed realty subject to use tax. Moreover, taxpayer is incorrect in its assertion that Section 7201(o)(4)(B) of the Code, 72 P.S. §7201(o)(4)(B), defining the term "use", applies to this second audit period, January 1, 1973 through February 28, 1977. As we indicated, that particular language was added to the

Code in 1980 and thus post-dates this assessment. Applying the statutory language extant at the time relevant here, we find no record evidence indicating that taxpayer installed these foundations for public utilities.

### NO. 182 C. D. 1985

The third assessment followed the Commonwealth's complete audit of the taxpayer's construction activities and a test audit of sales transactions for January 1, 1980 through June 30, 1983. Of this assessment, affirmed by the Board in its entirety, taxpayer challenges the imposition of sales tax in the amount of $44,319.60[6] upon sales of electrical transformers, substations and capacitors deemed tangible personal property after installation. As in the preceding assessment (No. 1331 C. D. 1980), taxpayer proposes that these items are not taxable because they are sold to manufacturers and used "directly in . . . the manufacture of personal property," so as to be excluded from tax under the relevant portion of Section 201(k) of the Code, 72 P.S. §7201(k). In this instance, taxpayer has adduced testimony in support of its contention, although we do not find this evidence persuasive.

The Code defines "manufacture" as:

The performance of manufacturing, fabricating, compounding, processing . . . which place[s] any personal property in a form, composition or character different from that in which it is acquired . . . and shall include but [is] not limited to—

(1) *Every operation commencing with the first production stage and ending with the completion of personal property* having a physical

---

[6] Taxpayer concedes sales tax in the amount of $4,917.23 as due and owing to the Commonwealth.

qualifies [sic] . . . which it has when transferred by the manufacturer to another. . . . (Emphasis added.)

Section 201(c) of the Code, 72 P.S. §7201(c).

The auditor found that the installed electrical equipment did not release power at useable levels, requiring further reduction to "make it adaptable to the machinery." We concur in his assessment that the necessity of further reduction makes the assessed equipment pre-production and, therefore, taxable.

In *Oberg Manufacturing Co., Inc. v. Commonwealth,* 87 Pa. Commonwealth Ct. 169, 486 A.2d 1047 (1985), this Court held that in order for tangible personal property to be excluded from use tax, pursuant to Section 201(o)(4)(B)(i), 72 P.S. §7201(o)(4)(B)(i) (excluding from the definition of "use" tangible personal property used "directly . . . in the manufacture of personal property"), it must be used by the manufacturer (1) during the production stages, (2) directly and (3) predominantly in manufacturing. We there held that engineering supplies were used prior to the commencement of the first production stage and, hence, were taxable. Taxpayer's representative testified that the equipment was "essential" to the manufacturing processes of his customers.[7] Because subsequent transformers are required to reduce the voltage to useable levels, we cannot find that the criteria of *Oberg* are satisfied.

Taxpayer again takes the position that the purchasers of the equipment were exempt from tax and relies upon numerous exemption certificates included in the Stipulation of Facts. As in the prior assessments, these certi-

---

[7] "The fact that particular property may be considered essential to the conduct of the business of manufacturing or processing . . . does not of itself, mean that the property is used directly in the manufacturing or processing operations." 61 Pa. Code §32.32(1)(iii).

fications are in no way correlated with the assessed transactions. The Board of Appeals noted that taxpayer failed to submit certificates of exemption to the auditor, despite a request to do so, and then submitted post-dated certifications not correlated to any assessed transaction and further lacking the list of specific items of equipment claimed by the customer to be exempt, as required by the pertinent regulation found at 61 Pa. Code §31.13.

Taxpayer attempts to validate the certificates at issue by invoking the provisions of Section 237(c) of the Code, which pertinently provide:

> An exemption certificate, which is complete and regular and on its face discloses a valid basis of exemption if taken in good faith, shall relieve the vendor from the liability [of collecting tax]. *An exemption certificate accepted by a vendor . . . in the ordinary course of the vendor's business, which on its face discloses a valid base of exemption consistent with the activity of the purchaser and character of the property or service being purchased, shall be presumed to be taken in good faith* and the burden of proving otherwise shall be on the [Commonwealth]. (Emphasis added.)

72 P.S. §7237(c). It submits that the presumption of good faith works to its benefit. We are persuaded to the contrary, however, by two regulations which state in pertinent part:

> (2) *Acceptance in good faith.* An exemption certificate to be accepted in good faith shall also meet the following requirements:
>
> (iii) The certificate shall be in the physical possession of the seller or lessor and available for departmental inspection, *on or before the six-*

*tieth day following the date of the sale or lease to which the certificate relates.* (Emphasis added.)
61 Pa. Code §32.(2)(iii).

> Notwithstanding any other procedure established by this section, any contractor . . . shall obtain a 'Certification' from the exempt public utility, manufacturer or similar customer.
>
> . . .
>
> Attached to the 'Certification' will be a *listing of the specific items of equipment, machinery or parts upon which the exempt customer claims an exemption.* (Emphasis added.)

61 Pa. Code §31.13(c)

The certificates submitted by taxpayer were neither timely nor complete and regular on their face because they were post-dated, incomplete and lacked the required listing of allegedly exempt items of equipment, materials or supplies. *See Renda.* Taxpayer's representative testified that a listing was impractical. Be that as it may, the required listing assures that specific items are put to an exempt use.

Finally, taxpayer contests use tax assessed on tools and safety equipment it used in the performance of contracts for the Pennsylvania Department of Transportation (DOT). Taxpayer's contention that *DOT* uses the highway markers and barricades, rather than taxpayer, because these items are required by contract, is specious. We further reject taxpayer's contention that Section 201(4)(B) of the Code, 72 P.S. §7201(4)(B),[8] ex-

---

[8] Section 201(o) of the Code, pertaining to the definition of "use," states as follows:

And provided further, That the term 'use' shall not include—

. . .

(B) The use or consumption of tangible personal property, including but not limited to machinery and

cludes foundations from taxation in the instant assessment. The specified exclusions do not stand alone. The taxpayer must satisfy the preceding statutory criteria before the exclusions become applicable and taxpayer has not done so.

We cannot conclude that taxpayer has "established that [it] acted in good faith, without negligence and with no intent to defraud" the Commonwealth so as to warrant an abatement of penalties in the third assessment. Section 269 of the Code, 72 P.S. §7269. This record is replete with instances of taxpayer's failure to comply with the provisions of the Code and pertinent regulations; at best, the record reveals taxpayer's lackadaisical attitude regarding its tax liability to the Commonwealth.

---

equipment and parts therefor, and supplies or the obtaining of the services described in subclauses (2), (3) and (4) of this clause directly in any of the operations of—

(i) The manufacture of personal property;

(ii) Farming, dairying, agriculture, horticulture or floriculture when engaged in as a business enterprise;

(iii) The producing, delivering or rendering of a public utility service, or in constructing, reconstructing, remodeling, repairing or maintaining the facilities which are directly used in producing, delivering or rendering such service;

(iv) The processing of personal property as defined in subclause (d) of this section.

The exclusions provided in subparagraphs (i), (ii), (iii) and (iv) shall not apply to . . . *materials, supplies or equipment to be used or consumed in the construction, reconstruction, remodeling, repair or maintenance of real estate other than machinery, equipment, parts or foundations therefor that may be affixed to such real estate. . . .* (Emphasis added.)

72 P.S. §7201(o).

## Conclusions of Law

1. Taxpayer has not met its burden of proving that sales and use taxes were improperly assessed during the three audit periods here at issue.

2. Taxpayer has not submitted exemption certificates which are complete and regular on their face so as to relieve it of tax liability.

3. The Commonwealth's assessment of use tax, as modified by the Board, in the amount of $6,762.39 in the first audit period was proper.

4. The Commonwealth's assessment of sales and use taxes, as modified by the Board, in the amounts of $2,459.11 and $26,001.16, respectively, in the second audit period was proper.

5. The Commonwealth's assessment of sales and use taxes, as affirmed by the Board, in the amounts of $49,237.53 and $46,299.59, respectively, together with a penalty of $13,046.61, in the third audit period, was proper.

## Order

AND NOW, September 2, 1987, the orders of the Board of Finance and Revenue in the above-captioned matters are affirmed.

It is further ordered that unless Exceptions are filed within thirty (30) days from the date of this order the Prothonotary shall enter judgment in favor of the Commonwealth of Pennsylvania in the amount of $143,806.39, plus appropriate interest.