William FIORE, t/a Fiore Trucking and Contracting, Petitioner,

v.

COMMONWEALTH of Pennsylvania, Respondent.

William M. Fiore, d/b/a Fiore Trucking and Contracting, Petitioner,

v.

COMMONWEALTH of Pennsylvania, Respondent (Two Cases).

Commonwealth Court of Pennsylvania.

Argued Nov. 16, 1995.

Decided Dec. 15, 1995.

William Fiore, pro se.

Clinton G. Smith, Jr., Deputy Attorney General, for respondent.

Before DOYLE and NEWMAN, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

This case is before us on remand from the Supreme Court of Pennsylvania which vacated this Court's order of tax deficiency and ordered a new hearing before this Court. The basis for this order was that William Fiore, t/d/b/a Fiore Trucking and Contract-

ing (Taxpayer) had been denied procedural due process when this Court permitted the Commonwealth of Pennsylvania (Commonwealth) to assert new legal theories regarding Taxpayer's liability for the tax assessments just weeks before the hearing before this Court (Hearing I), thus forcing the Taxpayer to justify his exemption and counter these new arguments on only twenty days notice.

During the ten years following the first audit, the taxing authority had successfully asserted the legal standard that a common carrier could not properly serve one customer. At a later stage of the proceedings, during the appeal to the Commonwealth Court, it was determined that such a standard was erroneous, and thus, subsequently, the Commonwealth argued successfully at Hearing I that Taxpayer should be denied his exemption because of his poor record keeping and because Taxpayer was not a common carrier or lacked a license or certification. Consequently, the Supreme Court held that Taxpayer was denied his due process rights when he was denied a meaningful opportunity "to prove his entitlement to exemption from the sales and use tax, after receiving sufficient notice to search his records and prepare documentation of his claimed entitlement." *Fiore v. Commonwealth Board of Finance and Revenue*, 534 Pa. 511, 518, 633 A.2d 1111, 1115 (1993).

The facts underlying this controversy prior to remand were summarized by the Supreme Court as follows:

> The taxpayer, Fiore [Trucking and Contracting], is a proprietorship licensed by the Department of Revenue for sales and use tax collection and remittance. Fiore purchased liquid fuel, depreciable equipment, parts, tires, repairs, mobile homes, an airplane and other property, and also leased certain trucks, all of which provide the basis for sales and use tax assessments.
>
> William Fiore also owned and operated other proprietorships operated under various trade names including Mill Industrial Service Company, Diamond Fuel, Diamond Excavating and Hauling, and Rolling Hills Village; William Fiore also was the sole

shareholder and operator of Bill's Trucking, Inc. These various entities had overlapping business activities and records, and the intermingling of their business activities appears to be responsible in large part for the difficulties in auditing the taxpayer and assessing the taxes owed by Fiore Trucking and Contracting Company.

> The taxpayer was audited by the Department of Revenue for the period January 1, 1975, through September 30, 1978, resulting in an assessment for a deficiency of $216,741.26 plus interest of $35,038.99 and a penalty of $52,609.86, or a total of $304,390.11. Fiore's appeal to the Board of Finance and Revenue resulted in abatement of the penalty but affirmance of the deficiency and interest. The deficiency of $251,780.25 was appealed to the Commonwealth Court at docket number 925 C.D. 1980.

> During the pendency of the appeal of the first assessment, the department again audited Fiore, this time examining the period October, 1978 through December, 1981. The department assessed a deficiency of $831,207.28 plus interest of $226,-626.01 and a penalty of $207,801.87, or a total of $1,265,635.16. The appellate boards of the department reduced the assessment to $770,495.79 plus appropriate interest and penalties. This second deficiency assessment was appealed to the Commonwealth Court at docket number 895 C.D. 1985.

> The second audit resulted in an additional assessment for a fuel use tax deficiency in the amount of $81,728.57 plus interest of $24,963.68 and a penalty of $8,172.86, or a total of $114,865.62. This was affirmed in all respects by the Board of Finance and Revenue, and was appealed to the Commonwealth Court at docket number 1029 C.D. 1985.

> The three appeals were consolidated in the Commonwealth Court, which affirmed the three contested orders of the Board of Finance and Revenue. *Fiore v. Commonwealth*, 141 Pa.Cmwlth. 578, 596 A.2d 1147 (1991), *aff'd on exceptions, Fiore v. Com-*

*monwealth,* 148 Pa.Cmwlth. 62, 609 A.2d 862 (1992) (en banc).

*Id.* at 514, 633 A.2d at 1112–13.

Pursuant to the remand order, this Court scheduled a status conference for January 24, 1994, later rescheduled for February 15, 1994, which resulted in an order, filed March 9, 1994: (1) to schedule an evidentiary hearing after Taxpayer was given sufficient time to search his records and prepare documentation for presentation at the hearing; (2) to include the entire record, consisting of the prior testimony and depositions and exhibits offered and entered into evidence in this Court's prior hearing involving this case, as part of the record in the evidentiary hearing which was to be scheduled in the future; and (3) to schedule a second status conference for April 14, 1994, prior to which the parties were to prepare a statement advising this Court of the issues and legal theories they each wished to pursue in the evidentiary hearing.

After the parties filed the required statement, they agreed that they were ready for another status conference, which took place on August 9, 1994. As a result of this status conference, the parties submitted their prehearing statements and a list of the witnesses who would be called and the exhibits which would be offered. The parties agreed they were ready for a second hearing (Hearing II), which was scheduled for November 14, 1994. Immediately before this hearing, Taxpayer's attorney, Henry G. Beamer, was granted leave to withdraw as counsel on his motion stating that he had been discharged by Mr. Fiore who wished to proceed *pro se.*

At the end of Hearing II, after Taxpayer had closed and rested his case and the Commonwealth had presented no witnesses and rested its case, this Court permitted both Taxpayer and the Commonwealth to review and make an inventory of the boxes of documents marked for identification as Taxpayer's exhibits 7 through 14, in order to find leases which allegedly would show that Taxpayer leased his trucks and equipment to tax-exempt entities. Subsequent to this review, the Commonwealth presented objections to the admission of these exhibits, and argument was held on February 28, 1995 on the admissibility of these documents. We make the following findings of fact on the basis of Hearing II.

1. Although Attorney Beamer had been allegedly discharged by Mr. Fiore and was granted leave to withdraw as his counsel, Attorney Beamer was present throughout the three days of hearings, where he sat with Mr. Fiore at counsel table until ordered not to do so, and intermittently handed documents to Mr. Fiore for use at the hearing, and regularly consulted with him throughout the proceedings.

2. The Public Utility Commission (PUC) certificates licensing both Bill's Trucking, Inc. (Bill's Trucking) and William M. Fiore t/a Mill Industrial Service Co. (Mill Industrial) as motor vehicle common carriers were submitted. These documents had been admitted into evidence in Hearing I and were made part of the record in Hearing II by virtue of this Court's order of March 9, 1994.

3. Mr. Bernard Kachmar, auditor for the Department of Revenue was called to testify by Taxpayer. He testified about his audit of Taxpayer for the period 10/1/78 to 12/31/81, and his narrative report of that audit which had previously been admitted into evidence.

4. Mr. Kachmar stated that he audited only Fiore Trucking and Contracting, and did not audit Bill's Trucking, nor did he audit Mill Industrial. He testified that the equipment owned by Taxpayer, and on which tax was assessed, was listed on Taxpayer's depreciation schedule. Taxpayer did not produce any evidence to show that the property depreciated was not owned by Fiore Trucking and Contracting, nor that the Commonwealth improperly assessed sales or use tax on the basis of this schedule. Although no sales or use tax had been paid by Taxpayer on this equipment during the relevant period, no evidence was introduced to show that Mr. Kachmar failed to take into account documentation, which would have been available to him, and which would have shown that the property was actually used in exempt public utility activity.

5. Taxpayer did not produce any evidence to show that Mr. Kachmar's audit was incomplete.

6. Taxpayer submitted 47 leases, marked as Petitioner's exhibit No. 3, to show that the trucks owned by Fiore Trucking and Contracting were leased to his other tax exempt entities. These leases proved to post-date all relevant time periods, that is they were leases dated 1984 or 1985, while the audits were for periods from 1975 to 1981.

7. Taxpayer presented evidence that in October, 1979 it applied for *contract carrier* authority from the PUC. (Petitioner's Exhibits Nos. 4 and 5.) In this application, verified by sworn affidavit, Taxpayer states that Fiore Trucking and Contracting did not hold any certificates of public convenience or permits for common carrier authority. Contract carrier authority was not granted on the basis of this application due to insufficient documentation.

8. Taxpayer did not present any evidence showing that it held a certificate of public convenience for common carrier authority from the PUC for Fiore Trucking and Contracting.

9. Mr. Stan Noszka, who performed the field audit of Taxpayer for the period January 1, 1975, through September 30, 1978, was called by Taxpayer and testified that he had no independent recollection of the audit, apart from what was written in his December 1978 narrative report and attached exhibits.

10. Mr. Alex Possino, Taxpayer's accountant for the audit years, was called by Taxpayer and testified regarding Taxpayer's bookkeeping practices. He stated that all the money generated by Mill Industrial, another entity owned by Mr. Fiore, was deposited in the bank accounts set up in the name of Fiore Trucking and Contracting, and that some of the money generated by Bill's Trucking, a corporation owned solely by Mr. Fiore, was deposited in Fiore Trucking and Contracting accounts. Mr. Possino stated that Fiore Trucking and Contracting did all the billing for Mill Industrial and Bill's Trucking, and that the receipts journal did not indicate which Fiore entity performed the services for which the money was paid. He admitted that he had no personal knowledge of how the items assessed for sales or use tax deficiencies were used.

11. Mr. Possino stated that no equipment or trucks were owned by Mill Industrial or Bill's Trucking, except for some trucks owned by Bill's Trucking at the time Mr. Fiore acquired the corporation and which were fully depreciated. He also stated that the trucks used by Bill's Trucking were rented or leased from Fiore Trucking and Contracting, but that he had never seen these leases. He also stated that he had no personal knowledge whether the trucks owned by Fiore Trucking and Contracting were engaged in PUC activities.

12. Mr. Martin Smith, a taxation auditing manager with the Pennsylvania Department of Revenue, Bureau of Audits, testified regarding his October 7, 1990 report on the documents submitted by Taxpayer for the audits of Fiore Trucking and Contracting conducted by the Commonwealth. He stated that he had reviewed this conglomeration of documents which related to a number of Mr. Fiore's entities, not just to Fiore Trucking and Contracting. He stated, consistent with his report which was made part of the record in the November 26–27, 1990 hearings, that the thirty-four (34) boxes submitted by Taxpayer contained a mixture of sole proprietorship and corporation records, and undifferentiated bills of lading, weight slips, coke slips, drivers' logs and dispatch books, etc., from the various entities which Mr. Fiore owned.

13. The November 14–16, 1995 hearing was continued and Taxpayer and the Commonwealth were ordered to inspect and inventory the boxes submitted into evidence as Petitioner's Exhibits 7–14. Taxpayer's inventory failed to correlate the contents of each box with a specific exhibit number, and it was therefore often impossible to ascertain whether Taxpayer's inventory corresponded to that of the Commonwealth. Moreover, Taxpayer inventoried the contents after the Commonwealth had finished its review, and noted that, "the files belonging to Mr. Beamer that were incorrectly included have been removed." Taxpayer did not specify which files were removed.

14. Neither party lists in its inventory of exhibits 7–14, any leases which, as Taxpayer alleged, would show that Taxpayer leased its equipment to other Fiore entities which held

PUC certificates during the relevant audit years.

15. Petitioner's Exhibits 7–14, are boxes and one folder which contain miscellaneous documents, including purchase orders, bills of lading, time logs, invoices, etc. For example, Exhibit 9 contains 1982 cash receipts and a receiving and shipping journal for Municipal Industrial Disposal Co.; "Bill Fiore Trucking's" time slips; Mill Industrial's clock vouchers from U.S. Steel Corp.; miscellaneous diesel fuel invoices from Exxon USA to Fiore Trucking and Contracting; 1984 Pennsylvania gross receipts tax settlement sheets; various bills, Internal Revenue Service forms (1099's), and Dillner Storage weight tickets. Thus, some documents post-date the audit period, and Fiore Trucking and Contracting documents are intermingled with those of other entities. None of the documents show which entity operated the assessed equipment, nor what constituted the predominant use of the assessed equipment.

16. Mr. Fiore affirmed that he was satisfied that he was given an opportunity to show that the equipment assessed was used in common carrier activities.

In keeping with the Supreme Court's opinion, Taxpayer was given notice by this Court that he must search his records and prepare documentation for his second hearing on his claimed entitlement to a public utility exclusion for assessed items of equipment. In order to prove this entitlement, and overcome the Commonwealth's theories of liability, Taxpayer was required to prove that Fiore Trucking and Contracting: (1) held authority as a common carrier; (2) had met its burden to prove that the assessed property was predominantly used directly in the rendition of public utility service, and (3) complied with 72 P.S. § 7271(a)[1] and 61 Pa. Code § 34.2(a)(1), regarding the maintaining of records from which it could be ascertained by the Commonwealth, with reasonable facility, whether or not use tax was due, and the amount that was due.

■ It is well established that the burden is on the taxpayer challenging the assessment to show that the tax has been improperly assessed, while the Commonwealth is not required to prove facts necessary to sustain the assessment. *J.L Turner Co. v. Commonwealth,* 41 Pa.Cmwlth. 146, 399 A.2d 433 (1979).

Section 7202(b) of the Tax Reform Code of 1971[2] (Tax Code) requires that a six percent use tax be levied on all personal property purchased at retail. Subparagraphs (i) and (iii) of Section 5201(*o*)(4)(B) of the Tax Code,[3] exclude from taxation the use of tangible personal property if it is used "directly" in the manufacture of personal property, or in the operation of a public utility in rendering the public utility service. Moreover, Section 5201(*o*)(4)(B) provides that the exclusions found in the above subsections do not apply to any vehicle required to be registered under the Vehicle Code[4] except those vehicles directly used by a public utility engaged in the business as a common carrier.

In addition, 61 Pa.Code § 32.34(a)(2) provides that property:

> when predominantly used directly in rendering a public utility service, shall be exempt from tax. Where a single unit of property is put to use in two different activities, one of which is a direct use, and the other of which is not, the property shall not be exempt from tax unless the public utility makes use of the property more than 50% of the time directly in public utility activities.

■ Thus, in order for a taxpayer to prove his entitlement to an exemption from use tax, a taxpayer must establish that the entity using the assessed items of property has public utility authority, and that the assessed items of property were directly and predominantly used in the rendition of a public utility service, or in manufacturing. In the case of those vehicles required to be registered under the Vehicle Code, a taxpayer must prove he is entitled to exemption by

---

1. Section 271(a) of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended.*

2. Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7202(b).

3. 72 P.S. § 7201(*o*)(4)(B)(iii).

4. 75 Pa.C.S. §§ 101–9821.

showing that the vehicles were directly used by a business with common carrier authority.

■ Mr. Fiore first argues that Fiore Trucking and Contracting, which was a sales and use tax licensed individual proprietorship, was a PUC licensed common carrier. Mr. Fiore claims that because he individually, was issued P.U.C. authority in 1953, and held this PUC certificate for forty-two (42) years, the entity, Fiore Trucking and Contracting, is entitled to such exclusion from sales and use tax. However, there is no evidence in the record of either Hearing I or Hearing II to support this claim.

■ The record from Hearing I establishes that William Fiore, individually, held PUC authorized common carrier rights in his name until 1974. At that time, he made application to the PUC to transfer his rights from William Fiore generally, to the distinct proprietorship, "William Fiore t/a Mill Industrial Service Co." The transfer of the right to provide motor carrier services must be approved by the PUC. 66 Pa.C.S. § 1102(a)(3); 52 Pa.Code § 27.6(a); *South Hills Movers v. Pennsylvania Public Utility Commission*, 144 Pa.Cmwlth. 505, 601 A.2d 1308 (1992). Subsequently, the transfer was effected, and Mill Industrial became the licensed common carrier.

Mr. Fiore also contends that he personally owned all the equipment, that is, the trucks and the trailers, and that he maintained and serviced all the equipment. He also claims that all the revenue earned by the two companies, Fiore Trucking and Contracting and Mill Industrial, was deposited in the account of Fiore Trucking and Contracting to pay for all costs of the equipment, including maintenance and service, and for payroll costs. He maintains, in effect, that because he combined his businesses under one financial umbrella, for the purposes of deposits, payroll and expenditures, all of his solely owned proprietorships, including the audited entity, Fiore Trucking and Contracting, have common carrier authority and are entitled to tax exemption. Thus, he would have this Court conclude that despite the fact that Fiore Trucking and Contracting holds no PUC certificate, and is therefore not subject to any of the operational standards imposed on com-

mon carriers, this entity is nevertheless entitled to common carrier authority and exemption from use and sales tax. This conclusion is without merit.

■ A certificate of public convenience is a privilege granted by the PUC, allowing the entity holding the certificate, in whose name it is issued, to operate a public utility, such as a common carrier, subject to the limitations imposed by PUC statutes and regulations. *Pennsylvania Public Utility Commission v. Zanella Transit, Inc.*, 53 Pa. Cmwlth. 359, 417 A.2d 860 (1980). Public utilities, including common carriers, are highly regulated by the PUC, and many aspects of the services offered by the entity certified come under close scrutiny by the PUC. Among other matters, the PUC approves and reviews the rates charged by the carrier, 66 Pa.C.S. §§ 1301–1302, the frequency and location of the service, 66 Pa.C.S. §§ 2301–2304, the safety and convenience of the facilities, and the fairness in the delivery of these services. 66 Pa.C.S. §§ 1501–1509. Thus, each entity or business holding a certificate of public convenience must comply with the conditions and restrictions imposed by statute and regulation and must file an annual report with the PUC. 52 Pa.Code § 27.10(a); *Fusaro v. Pennsylvania Public Utility Commission*, 34 Pa.Cmwlth. 14, 382 A.2d 794 (1978).

Therefore, if this Court were to accept Mr. Fiore's proposition that because he combines all his entities for billing and bookkeeping purposes under one of his named entities, Fiore Trucking and Contracting, this entity is entitled to tax exemption as a licensed public utility, we would undermine the entire regulatory framework of the PUC by permitting, and in fact condoning, the practice in which an entity would be allowed to provide services to the public without the requisite regulation and oversight of the PUC. *McQuaide v. Pennsylvania Public Utility Commission*, 157 Pa.Cmwlth. 249, 629 A.2d 272 (1993). This would also clearly circumvent the Public Utility Code's requirement that all carriers which provide service to the public hold a certificate of public convenience.

Moreover, the evidence does not support Mr. Fiore's contentions regarding the common ownership of all the equipment used in his carrier businesses. In this regard, the auditor, Mr. Kachmar, testified that the individual items of equipment, such as trucks, listed as operating equipment in a given year on the PUC annual reports filed by Mill Industrial, the proprietorship holding the PUC common carrier certificate, are not listed on any Fiore Trucking and Contracting income tax depreciation schedules.

The record also reflects that Mr. Fiore made application for "contract carrier" status to the PUC for Fiore Trucking and Contracting on March 10, 1980, which was never granted because of a failure to provide supplemental documentation. In this 1980 application, Mr. Fiore represented in a verified statement, that Fiore Trucking and Contracting presently held neither contract nor common carrier authority from the PUC. Thus, Mr. Fiore admitted that Fiore Trucking and Contracting was not a common carrier prior to 1980. In conclusion, we hold that Taxpayer failed to carry its burden to prove that Fiore Trucking and Contracting held a certificate of public convenience from the PUC as a common carrier in the relevant taxable years.

■ Mr. Fiore also failed to prove that the assessed equipment owned by Fiore Trucking and Contracting, or the fuel used by these trucks, was predominantly used in the direct rendition of public utility services. Mr. Fiore was required to show by record evidence that the assessed equipment was directly and predominantly used by a PUC common carrier entity, such as Bill's Trucking or Mill Industrial, in the rendition of a public utility service. Instead, Mr. Fiore offered into evidence boxes of undifferentiated documents from which it was impossible to ascertain the use of any assessed item of equipment. Although he had been given a year to prepare these documents, Mr. Fiore did not even know, prior to their inventory, what documents these boxes contained, nor did he know what these document were meant to establish.

Mr. Fiore insisted that Fiore Trucking and Contracting leased its equipment to other PUC entities for use in public utility service, and that such leases would be found in his boxes of documents. However, Mr. Fiore was unable to identify which boxes, among the many piled in the back of the courtroom, contained these leases. After this Court allowed Mr. Fiore time to select several boxes as possible sites for these leases and marked these boxes for identification, no leases were identified in the subsequent inventory. Moreover, the annual PUC reports did not reflect that equipment was leased to Mill Industrial from Fiore Trucking and Contracting, or from any other sources, while the leases marked for identification during Hearing II post-dated the relevant assessment period. Therefore, Taxpayer failed to prove that the assessed equipment was leased to a PUC licensed entity. *See* 52 Pa.Code § 31.32(c)(2)(k).

This Court gave Mr. Fiore every opportunity to present evidence of the direct and predominant use of the assessed items of property, but although voluminous evidence was submitted, it is not possible to ascertain either the use of the equipment or the entity predominantly using the equipment assessed for tax. Taxpayer's bare assertions that its equipment was used in manufacturing or in the delivering of a public utility service will not sustain its burden of proving that the tax was improperly assessed. *Bruce & Merrilees Electric Co. v. Commonwealth*, 109 Pa. Cmwlth. 101, 530 A.2d 994 (1987).

■ This failure of proof is in accord with our conclusion that Taxpayer's records are inadequate and not in compliance with statutory and regulatory record-keeping requirements. Although holding that Mr. Fiore was not given enough notice and time prior to Hearing I to provide documentation supporting his assertion that he was entitled to his exemption, the Supreme Court nevertheless ratified this Court's insistence on record keeping compliance stating, "Fiore is in no way relieved of his duty to comply with all statutory and regulatory strictures incumbent upon commercial taxpayers, upon common carriers or public utilities, or upon taxpayers claiming exemptions." *Fiore*, 534 Pa. at 517, 633 A.2d at 1114.

**1218**

In particular, 61 Pa.Code § 34.2(a)(1) requires that where the taxpayer has not paid use tax to either the vendor of the property or directly to the Commonwealth, the taxpayer must create and maintain records showing the reason he considered the purchase of such personal property as nontaxable, and information concerning the nature, use, price and dates of purchases and use of the property, from which it can be ascertained by the Department, with reasonable facility, whether or not use tax is due thereon and, if due, the amount of tax.

The records maintained by Mr. Fiore are inadequate to show why no use or sales tax was paid. For instance, the numerous bills of lading and driver time sheets are not connected by other documents or testimony with any specific piece of Taxpayer's assessed equipment. Therefore, they do not constitute any proof of the actual use made of the assessed equipment, and are inadequate to show compliance with the record keeping requirements mandated by statute and regulations for all public utilities.

## CONCLUSIONS OF LAW

1. Taxpayer, Fiore Trucking and Contracting Co., did not hold a PUC certificate of public convenience as a common carrier.

2. Taxpayer did not meet its burden to prove that the assessed property was predominantly used directly in the rendition of public utility service.

3. Taxpayer's records are inadequate and not in compliance with the statutory and regulatory record keeping requirements found in 72 P.S. § 7271(a) and 61 Pa.Code § 34.2(a)(1).

4. The use tax deficiency assessed at 925 C.D. 1980, as modified by the Board, for the period of January 1, 1975 through September 30, 1978, was proper.

5. The use tax deficiency assessed at 895 C.D. 1985, as modified by the Board, for the period October, 1978 through December, 1981, was proper.

6. The fuel use tax deficiency, assessed at 1029 C.D. 1985, for the period October, 1978 through December, 1981, was proper.

PELLEGRINI, J., did not participate in the decision in this case.

### *ORDER*

AND NOW, this 15th day of December, 1995, the orders of the Board of Finance and Review in the above-captioned matters are hereby affirmed.

It is further Ordered that unless exceptions are filed within thirty (30) days from the date of this order, the Prothonotary shall enter judgment in the favor of the Commonwealth of Pennsylvania in the following amounts:

*925 C.D. 1980*

Use Tax—$216,741.26 plus appropriate interest

*895 C.D. 1985*

Use Tax—$770,495.79 plus appropriate interest and penalties

*1029 C.D. 1985*

Fuel Use Tax—$81,728.57 plus appropriate interest and penalties.