Air Engineers, Inc., Appellant *v.* Commonwealth of Pennsylvania, Appellee.

Argued December 5, 1978, before President Judge
BOWMAN and Judges CRUMLISH, JR., MENCER, ROGERS,
BLATT, DISALLE and CRAIG. Judges WILKINSON, JR. and
MACPHAIL did not participate.

*Patrick M. Reb,* for appellant.

*Paul S. Roeder,* Deputy Attorney General, for ap-
pellee.

OPINION BY JUDGE MENCER, February 15, 1979:

Air Engineers, Inc. (Air Engineers) appeals from
an order of the Board of Finance and Revenue
(Board) sustaining an order of the sales-tax Board of
Review which denied Air Engineers' petition for re-
assessment and sustained the use tax assessed by the
Bureau of Sales and Use Tax. A partial stipulation of
facts was filed by the parties, and additional testimony
was taken at a hearing in this Court on June 28, 1978.

Under Section 1104 of The Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. §1104, appeals from the Board are heard de novo. We adopt the relevant and material facts in the partial stipulation as our findings of fact. We will briefly set forth in narrative form those facts material to the issue involved, as well as certain additional findings of fact based on testimony at the hearing.

Air Engineers is a mechanical contractor engaged in the designing, engineering, and installation of plumbing, heating, air-conditioning, and temperature-control systems. Air Engineers installs these systems in commercial, industrial, public, and church buildings. In addition, it sells at retail items from its warehouse location. During the years audited, its gross sales were approximately $3,500,000 annually, of which approximately 99 percent was attributable to construction contracts and 1 percent to retail sales, repair work, and warranty service work.

An audit of the books and records of Air Engineers was performed covering the period of January 1, 1970 to January 31, 1974 and an assessment lodged against Air Engineers for understatement of use tax in the sum of $109,792.29, together with penalty and interest. The penalty was abated by the sales-tax Board of Review.

On this appeal, Air Engineers raises the single question of whether or not the procedures utilized in the audit of its books and records were proper and disclosed necessary information to establish a use-tax deficiency.

Our review of this record leads us to find as a fact that the auditor here based the use-tax assessment on the figures shown in Air Engineers' general ledger account captioned "Purchases of Construction Materials." Further, we find that from the purchases in this

account the auditor deducted all items covered by valid customer exemption certificates, purchases resold, and interim storage exemptions prior to March 4, 1971 and gave credit for purchases used internally for which tax had been paid.

Materials incorporated into realty by a contractor are subject to a use tax. *Commonwealth v. Beck Electric Construction, Inc.*, 32 Pa. Commonwealth Ct. 229, 379 A.2d 626 (1977). Did the audit performed here disclose such use of materials by Air Engineers to the extent of the assessment? We conclude that it did so.

Section 271(d) of the Tax Reform Code of 1971 (Code),[1] Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §7271(d), provides:

> (d) Keeping of Separate Records. Any person doing business as a retail dealer who at the same time is engaged in another business or businesses which do not involve the making of sales taxable under this article, shall keep separate books and records of his businesses so as to show the sales taxable under this article separately from his sales not taxable hereunder. If any such person fails to keep such separate books and records, he shall be liable for tax at the rate designated in section 202 of this article [72 P.S. §7202] upon the entire purchase price of sales from both or all of his businesses.

The explicit purpose of Section 271(d) is to require taxpayers to keep records in such a manner that the re-

---

[1] A portion of the assessment period, January 1, 1970 to March 1, 1971, was subject to the provisions of the Tax Act of 1963 for Education, Act of March 6, 1956, P.L. (1955) 1228, *as amended, formerly* 72 P.S. §3403-1 et seq., repealed by the Act of March 4, 1971, P.L. 6. No assertion is being made in the instant case that the statutory provisions and bureau regulations relevant here were not essentially the same under the 1963 Act as under the Code.

tail side of the business is differentiated from the other business being conducted by the taxpayer. The record reveals that Air Engineers did not keep such separate books and records. The "Purchases of Construction Material" general ledger account covered purchases for several uses, and in regard to some purchases there was readily no way the original purchase could be traced to the ultimate use of the purchased material.

Department of Revenue Regulation 150 provides, in pertinent part, as follows:

Reg. 150. Construction Contractor.—

1. Definitions.

a. *Contractor*: Any person engaged in performing a construction contract or 'construction activities.' The term 'contractor' includes prime contractors and subcontractors.

b. *Construction Contracts*: A contract whether lump sum, cost plus, unit price or time and materials under which a person agrees to perform 'construction activities.'

c. *Construction Activities*: Any activity resulting from an agreement or contract under which a contractor attaches or affixes property to real estate so as to become a permanent part thereof. Construction activities also include the service of repairing real estate even though no property is transferred by a contractor in conjunction with the repairs which he makes. Examples of construction activities include: Erecting a building; constructing a bridge or road; installing tile or terrazzo; painting a building; repairing a roof; landscaping or planting trees or grass; repairing spouting, faucets, furnaces or plaster; laying brick or stone; excavating a cellar; paper hanging; replacing a window

pane; installing a kitchen cabinet; moving a building; installing or replacing electrical outlets; etc.

. . . .

2. Imposition of Tax.

a. *Construction Activities*: A contractor is required to pay tax upon the purchase price (as defined by the Code) of all property, including materials, equipment, components and supplies, which he furnishes and installs in the performance of his construction activities.

. . . .

A contractor whose activities are confined to construction activities is required to pay tax directly to his supplier at the time he purchases the materials, equipment, components or supplies which he furnishes and installs. A use tax license number is available to a construction contractor from the Department to permit him to remit tax directly to the Department upon the purchases from vendors who are not required or are not licensed with the Department for the collection and remission of tax.

. . . .

A contractor who performs both construction activities and sales activities is required to be licensed with the Department for the collection and remission of sales tax and is issued a sales tax license number. As to property which he *knows* he will resell, he may use a resale exemption certificate upon his purchase from his supplier. He must collect and remit tax upon such sales. As to all other purchases which he may make, he is *required to pay tax to his supplier at the time of purchase.*

b. *Sales Activities*: A contractor who, in addition to performing construction activities, makes sales at retail (as defined by the Code) of tangible personal property is deemed to be a vendor and is required to register with the Department for the collection and remission of tax upon the sales which he makes.

. . . .

3. Claims for Exemptions.

*General*: With the exception of the limited exemption set forth under (a) and (b) below, a contractor may claim no exemption upon his purchase of materials, supplies, equipment or parts which he installs so as to become a part of the real estate in conjunction with his construction activities. Thus, a contractor erecting a building, repairing a roof, replacing a door for a governmental agency, manufacturer, processor, public utility, school district, charitable or religious organization, etc., *is required to pay tax* upon the property which he consumes *and is not entitled to use the exemption of the ultimate customer* for whom he is performing the contract.

. . . .

b. *Contractors Resale Exemption for Exempt Entities OTHER THAN Public Utilities, Manufacturers, Processors, Dairies and Farmers*: A contractor who is licensed with the Department to collect and remit sales tax, i.e. holds a sales tax license, may make tax free purchases of property which he will sell by tendering to his supplier a completed copy of a Blanket Exemption Certificate (Form RSU-355). To qualify as a valid exemption certificate, the face side of the certificate must reflect the following lan-

guage: 'Property and/or services will be resold in the ordinary course of the purchaser's business conducted under Pennsylvania Sales Tax License Number (Insert Number).' (A sample copy of the required format appears in Annex A to this Regulation and is marked 'Sample Form No. 1'). Should the exempt customer to whom the property will be transferred hold a valid exemption, i.e. a governmental agency, school district, etc., applying to the property being transferred, the contractor must obtain a completed copy of a Blanket Exemption Certificate (Form RSU-355) from the exempt entity in lieu of the collection of tax. Should the ultimate consumer not hold an exemption, the contractor is required to collect and remit the tax upon the contract price of the item or items including any charges for delivering or installing the item pursuant to the contract.

. . . .

4. Taxes Paid Purchases Resold (TPPR).

Should a contractor later resell a particular item to a nonexempt customer with respect to which he has paid sales tax at the time of purchase, he must nonetheless collect the full sales tax upon his retail price from his customer, and he must report the tax so collected to the Department. He may, however, at the time he reports the tax take a credit on account of 'Taxes Paid—Purchases Resold' ('TPPR') against the tax which he has collected equal in amount to the tax which he paid to his supplier, provided that he paid such tax to his supplier within three (3) years of the date of resale. He must indicate upon his return the amount of tax which he has paid to his suppliers upon items sold which he

is crediting against the tax collected from his customer on account of 'TPPR.' It is not sufficient merely to report and remit tax upon the 'markup' without indicating to the Department upon his return the amount of credit which he has taken. (Emphasis added.)

A properly promulgated regulation has the force and effect of law. *Riebe Construction Co. v. Commonwealth*, 17 Pa. Commonwealth Ct. 508, 333 A.2d 226 (1975). Air Engineers makes no attack against the applicable regulations.

This record reveals that Air Engineers did not pay sales tax upon the purchase of the construction materials in question, did not limit its use of the blanket exemption certificates to purchases that would be resold, did not pay tax upon purchases which went into construction projects, and did not have available valid exemption certificates for materials which were installed as part of the realty of certain churches, hospitals, and government buildings.

Thus, contrary to Air Engineers' contention that the assessment in question is predicated on a gross-purchases assessment, the use tax is assessed only on the purchases in the taxpayer's general ledger account entitled "Purchases of Construction Material." Air Engineers' failure to pay sales tax upon purchases of building materials resulted in liability for use tax when those materials were incorporated into realty. *Commonwealth v. Beck Electric Construction, Inc.*, *supra*. As we have noted, the tax was assessed only after excluding purchases for which Air Engineers had a valid exemption certificate, for purchases resold at retail, and for certain interim storage items. Accordingly, we must conclude that the remaining purchases in that account were used for construction and that the auditor properly determined that they were subject to

use tax in the absence of evidence from the taxpayer to the contrary.

We therefore make the following

## Conclusions of Law

1. During the time period of January 1, 1970 to March 1, 1971, Section 201(b) of the Tax Act of 1963 for Education, Act of March 6, 1956, P.L. (1955) 1228, *as amended, formerly* 72 P.S. §3403-201(b), repealed by the Act of March 4, 1971, P.L. 6, imposed a tax of five (5) percent upon the use within this Commonwealth of tangible personal property purchased at retail as defined in the Act.

2. During the time period of March 1, 1971 to January 31, 1974, Section 202(b) of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §7202(b), imposed a tax of six (6) percent upon the use within this Commonwealth of tangible personal property purchased at retail as defined in the Code.

3. Materials purchased at retail and incorporated into realty by a contractor within this Commonwealth are subject to a use tax.

4. The Commonwealth correctly assessed a use tax against Air Engineers, Inc., in the amount of $109,-792.29, for the period January 1, 1970 through January 31, 1974, together with interest allowed by law.

5. Judgment should be entered in favor of the Commonwealth and against Air Engineers, Inc., in the amount of $109,792.29, together with interest allowed by law.

### Decree Nisi

Now, this 15th day of February, 1979, the appeal of Air Engineers, Inc., from the decision of the Board of Finance and Revenue in refusing its petition for re-

view and sustaining the use tax assessment in question is hereby denied. The Chief Clerk is hereby directed to enter judgment in favor of the Commonwalth and against Air Engineers, Inc., in the amount of $109,-792.29, together with interest allowed by law, unless exceptions are filed hereto within thirty (30) days. The Chief Clerk is directed to notify forthwith the parties hereto or their counsel of this decree.