596 A.2d 1147

William FIORE, t/a Fiore Trucking
and Contracting, Petitioner,

v.

COMMONWEALTH of Pennsylvania, Respondent.

William M. FIORE, d/b/a Fiore Trucking
and Contracting, Petitioner,

v.

COMMONWEALTH of Pennsylvania, Respondent (Two Cases).

Commonwealth Court of Pennsylvania.

Argued June 14, 1991.

Decided Aug. 7, 1991.

Henry G. Beamer, for petitioner.

Clinton G. Smith, Jr., Deputy Atty. Gen., for respondent.

Before CRAIG, President Judge, and COLINS, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

This matter comes to us on appeal from three separate orders of the Board of Finance and Revenue (Board) sustaining the sales and use tax assessments imposed against William M. Fiore d/b/a Fiore Trucking and Contracting Company (Taxpayer).[1] The tax assessments, interest and penalties found owing by the Board are:

| | | |
|---|---|---|
| No. 895 C.D. 1985 = | $1,265,635.16 |
| No. 925 C.D. 1980 = | 304,390.11 |
| No. 1029 C.D. 1985 = | 114,865.12 |
| TOTAL | $1,684,890.39 |

Although William Fiore owns a number of business entities, these assessments were made only against William Fiore, t/a Fiore Trucking and Contracting, *and that is the only enterprise with which we are now concerned.* We affirm.

██ Cases appealed to this Court from determinations of the Board of Finance and Revenue are de novo and are governed by Pa.R.A.P. 1571; *Bruce & Merrilees Electric Co. v. Commonwealth of Pennsylvania,* 109 Pa.Commonwealth Ct. 101, 530 A.2d 994 (1987). According to the provisions of that rule, the Board does not certify a record to us; rather, the parties are directed to file stipulations of agreed facts and to identify the facts, if any, which must be tried. If necessary, this Court conducts an evidentiary hearing under Pa.R.A.P. 1542(b) to resolve facts in dispute.

---

1. Taxes were assessed pursuant to Section 202 of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7202.

In this particular case, the parties filed partial stipulations of fact in which they admitted the truth of the Department of Revenue audit reports and supporting work papers upon which the assessments were made, but reserved the right to object to the materiality or relevance of those documents. The parties were unable to agree to facts which would establish Taxpayer's right to exemption from taxation or to a credit for taxes already paid on certain of the items listed in the audit reports. Consequently, the Court heard testimony and received evidence on these issues. From the partial stipulations of fact and credible hearing evidence, we find the following relevant facts.

## FINDINGS OF FACT

1. Fiore Trucking & Contracting Co. is a sole proprietorship owned and operated by William Fiore, and engaging in the business of hauling property by motor vehicle.

2. William Fiore also owns and operates the following sole proprietorships:

 a. Diamond Excavating & Hauling, which has no apparent business activity;

 b. Diamond Fuel, which has no apparent business activity, but is operated only to keep the payroll records for Fiore Trucking & Contracting separate;

 c. Mill Industrial Service Co., which is engaged in the business of transporting property by motor vehicle; and

 d. Rolling Hills Village, which is engaged in the business of operating a mobile home park.

3. William Fiore is also the sole stockholder of Bill's Trucking, Inc., a Pennsylvania corporation engaged in the business of transporting property by motor vehicle.

4. In addition to the above-mentioned business entities, William Fiore also used other business names, among them, Fiore Construction, Diamond Excavating and others, but there was no indication of what business activities these entities pursued.

5. Bill's Trucking, Inc. is licensed as a motor vehicle common carrier under PUC License No. A81360.

6. William M. Fiore t/a Mill Industrial Service Co. is licensed as a motor vehicle common carrier under PUC License No. A75776. At the request of Mr. Fiore, that license was transferred from William Fiore individually to William M. Fiore t/a Mill Industrial Service Co. by order of the PUC dated August 20, 1974.

7. William Fiore holds Sales and Use Tax License No. 89-09117-2.

8. William Fiore d/b/a Rolling Hills Village holds Sales and Use Tax License No. 02-90776-2.

9. The Department conducted a field audit to examine Taxpayer's records for the period of January 1, 1975 through September 30, 1978, and that audit led to the assessment of additional taxes, penalties and interest at No. 925 C.D.1980 as follows:

| TAX ON: | | AMOUNT |
|---|---|---|
| Liquid Fuel | | $ 26,732.59 |
| Depreciable Equipment | | 46,754.51 |
| Parts, Tires & Repair | | 143,254.16 |
| | Subtotal | $216,741.26 |
| | Interest | 35,038.99 |
| | Penalty | 52.609.86 |
| | TOTAL | $304,390.11 |

10. The Department conducted a field audit to examine Taxpayer's records for the period of October 1, 1978 through December 31, 1981, and that audit led to the assessment of additional taxes, penalties and interest at No. 895 C.D.1985 as follows:

| TAX ON: | | AMOUNT |
|---|---|---|
| Liquid Fuel | | $ 81,412.21 |
| Depreciable Equipment | | 283,114.16 |
| Parts, Tires & Repair | | 265,336.08 |
| Mobile Homes | | 18,674.76 |
| Truck Leasing | | 182,670.07 |
| | Subtotal | $831,207.28 |
| | Interest | 226,626.01 |
| | Penalty | 207,801.87 |
| | TOTAL | $1,265,635.16 |

11. As a result of the field audit for the period of October 1, 1978 through December 31, 1981, a second examination of Taxpayer's record was conducted, and an additional assessment of taxes, penalties and interest was made at No. 1029 C.D.1985 as follows:

| TAX ON: | AMOUNT |
|---|---|
| Liquid Fuel | $ 81,728.57 |
| Subtotal | $ 81,728.57 |
| Interest | 24,963.68 |
| Penalty | 8,172.86 |
| TOTAL | $114,865.12 |

12. The Taxpayer's administrative appeals brought relief of penalty abatement in the matter at 925 C.D.1980 and in the second use tax assessment the deficiency was reduced to "Use Tax—$770,495.79, plus appropriate interest and penalties." The Fuel Use Tax assessment was sustained in its entirety.

13. Taxpayer purchased the liquid fuel, depreciable equipment, parts, tires, repairs, mobile homes, airplane, and other property, and also leased certain trucks, all of which transactions provide the basis for the aforementioned tax assessments.

14. There is no credible evidence of record that Taxpayer is engaged in manufacturing nor that Taxpayer used the aforementioned assets directly in the manufacturing processes of another. Further, Taxpayer did not raise or preserve the question of the applicability of the manufacturing or resale exclusions before the administrative agency.

15. There is no credible evidence of record that Taxpayer remitted any taxes in connection with the aforementioned assessed goods or services which would entitle Taxpayer to a credit for taxes paid.

16. Taxpayer does not hold a PUC Common Carrier Certificate.

17. Taxpayer failed to segregate its business activities from other business enterprises owned and operated by William M. Fiore.

18. Taxpayer failed to keep adequate business records as required by statute and regulations.

## ISSUES

Taxpayer raises the following issues for our consideration: [2]

1. Whether the Board erred in determining that Taxpayer was not a common carrier because it served predominantly one customer;

2. Whether one who holds a PUC certificate as a common carrier but serves predominantly one customer is entitled to claim the PUC exemption;

3. Whether Taxpayer is entitled to the exemption provided for property used directly in manufacturing;

4. Whether the Department erred by basing their conclusions and resulting tax assessments on a comparison of Taxpayer's tax returns with annual reports filed with the PUC because those returns and reports are hearsay;

5. Whether the Commonwealth Court erred by permitting the Department to raise new issues twenty days before the evidentiary hearing when it refused to let Taxpayer do the same;

6. Whether there were numerous due process violations committed throughout the proceeding.

## DISCUSSION

The general rule is that the burden is on the taxpayer to prove that the tax was improperly assessed and the Com-

**2.** Many other issues have been referred to in one manner or another by Taxpayer throughout these proceedings including a credit for taxes paid on some mobile homes and the propriety of tax on an airplane and many other matters. These other matters have not been properly briefed, but we note that the evidence of record does not sustain any entitlement to a credit for taxes paid, that the airplane was improperly taxed, or any other ancillary matters.

With regard to the airplane, Taxpayer alleged that the plane was bought for resale and therefore no tax was due. There is no credible evidence that the plane was resold.

monwealth has no duty to prove the validity of the assess-ments. Section 236 of the Code, *as amended*, 72 P.S. § 7236; *Bruce & Merrilees Electric Company*. In the case now before us, Taxpayer has failed to satisfy that burden by proving its assertion that its assets were used directly in common carrier service. Section 201(k)(8) of the Code, *as amended*, 72 P.S. § 7201(k)(8).

 The principal thrust of Taxpayer's appeal is prem-ised on an entitlement to an exemption on the basis that it holds a PUC certificate as a common carrier.[3] The first two issues raised by Taxpayer are based on that exemption. The simple truth is, however, that Taxpayer had no such certificate at any time encompassed by the audit report. Consequently, Taxpayer is not entitled to the PUC common carrier exemption.

3. Section 201(k)(8) of the Code, *as amended*, 72 P.S. § 7201(k)(8) provides in part:

The term 'sale at retail' shall not include (i) any such transfer of tangible personal property or rendition of services for the purpose of resale, or (ii) such rendition of services or the transfer of tangible personal property including, but not limited to, machinery and equipment and parts therefor and supplies to be used or consumed by the purchaser directly in any of the operations of—

(A) the manufacture of personal property;

. . . .

(C) The producing, delivering or rendering of a public utility service, or in constructing, reconstructing, remodeling, repairing or maintaining the facilities which are directly used in producing, delivering or rendering such service;

. . . .

The exclusions provided in paragraphs (A), (B), (C) and (D) shall not apply to any vehicle required to be registered under The Vehicle Code, except those vehicles used directly by a public utility engaged in business as a common carrier; . . .

The exclusions provided in paragraphs (A), (B), (C) and (D) shall not apply to tangible personal property or services to be used or consumed in managerial sales or other nonoperational activities, nor to the purchase or use of tangible personal property or services by any person other than the person directly using the same in the operations described in paragraphs (A), (B), (C) and (D) herein. The exclusion provided in paragraph (C) shall not apply to (i) construction materials, supplies or equipment used to construct, reconstruct, remodel, repair or maintain facilities not used directly by the purchaser in the production, delivering or rendition of public utility service. . . .

For whatever reason, Mr. Fiore has elected to organize his business affairs by establishing a number of separate entities. One of those entities, Bill's Trucking Inc., is incorporated and holds a PUC certificate for common carrier service. Another entity, Mill Industrial Services also holds a PUC certificate for common carrier service. The business audited in this case, Fiore Trucking and Contracting Services, holds no PUC certificate.[4]

Taxpayer treats the PUC licenses of Mill Industrial Services and Bill's Trucking Inc. as "floating authority" which were used by Mr. Fiore for whichever of his business concerns as he saw fit. Therefore Taxpayer argues, equipment owned by Taxpayer was used by the other business entities owned and operated by Mr. Fiore which had PUC certificates and Taxpayer is entitled to the PUC exemption. We reject this argument.[5]

In 1979, Fiore Trucking and Contracting applied for a contract carrier's certificate. Taxpayer reported on its application that it owned "247 licensed (Penna.) vehicles." Commonwealth's Exhibit 1. For that same year, Bill's Trucking Inc. reported to the PUC that it owned sixteen trucks, and Mill Industrial Services reported it owned fourteen trucks. (Stipulation of Facts filed at No. 895 C.D. 1985.) Clearly, there is a significant disparity between

4. Taxpayer did apply in October 1979 for a PUC certificate "for the right to begin to transport, as a *contract carrier,* by motor vehicle, concrete products and products used or useful in the manufacture, production and/or assembly of concrete products, for Pittsburgh Flexicore Company, Inc., from its facilities in the City of Monongahela, Washington County, *to points in Pennsylvania, and vice versa.*" Commonwealth's Exhibit 1. Taxpayer indicated on the application that it did not then hold any PUC certificate. The PUC approved Taxpayer's application by order adopted March 21, 1980, and entered March 27, 1980, provided however, that Taxpayer comply with certain requirements of the PUC. Apparently, Taxpayer never complied with those requirements and the record was closed by the PUC before Taxpayer ever met those requirements. *Id.* Thus no contract carrier certificate was issued.

5. We do not mean to suggest that it would be proper for a licensed common carrier to use the assets of other non-regulated carriers in common carrier service. Since there is no evidence of such use in this case, however, we do not need to address the matter.

these statements made to the PUC by these various Fiore enterprises, and the allegations that Taxpayer now makes— that the majority of its assets were used directly in common carrier service.

Taxpayer also offered in evidence hundreds of documents labelled "Scale Ticket" and carrying United States Steel Corporation's (USS) name and logo. Supposedly these were offered to prove that Taxpayer was engaged in common carrier service for USS. These documents, however, failed to identify the name of the carrier or shipper. Adding to the uncertainty of which entity actually performed the services related to these scale tickets are the voluminous USS "accounts payable remittance listings" entered in evidence showing payments made to Mill Industrial Services, Bill's Trucking Inc., as well as Taxpayer, Commonwealth's Exhibit 2. Since it is evident from these listings that USS was making payments to all three entities during the relevant period, it is impossible to link the nameless scale tickets to any of the three businesses. Fiore attempted to link the two with his testimony, but that self-serving testimony is not credible since the records were so incomplete and intermingled that we do not believe that anyone could say for certain which records correspond to which business entity. We are satisfied that there is no credible competent evidence of record which would sustain Taxpayer's asserted right to the PUC exemption contained in his first two issues.

Taxpayer's third argument is that he is entitled to an exemption because its assets were used directly in manufacturing.[6] Taxpayer itself does not engage in manufacturing, but instead bases this argument on its role allegedly transporting goods for USS. Since we have already determined that the evidence does not demonstrate that such a role exists, however, this issue also fails for insufficiency of proof.

6. See footnote 3 herein.

 The fourth issue questions the propriety of an auditor basing his assessments on a comparison of Taxpayer's tax returns to annual reports filed with the PUC by other entities because those documents are hearsay. This argument must fail for two reasons. First, Taxpayer stipulated to the audit reports and their supporting working papers. Since it has accepted the truth of these documents, Taxpayer may not now raise issues attacking their truth.

 Second, the auditors were conducting an examination of the Taxpayer's records to verify that all was in order. It is the very nature of auditing to look for discrepancies in those records. That is what auditors do. If Taxpayer's records are not copacetic, it may not be heard to complain that the auditors based their audit findings on the errors or misstatements of its own records.

The fifth issue raised by Taxpayer alleges that the Commonwealth was permitted to raise new issues twenty days before the hearing, and that Taxpayer was denied the same right. This is an inaccurate account of what transpired in this case. The parties stipulated to the tax assessments and the purpose of the evidentiary hearing was to establish the Taxpayer's entitlement, if any, to an exemption or credit. The Commonwealth has refuted and rebutted Taxpayer's assertions, but it has not been permitted to raise new issues. The Commonwealth's case was established by the audit reports which Taxpayer admits are true. Consequently, we reject Taxpayer's characterization of the proceedings.

Taxpayer has raised many issues purportedly grounded in the Due Process Clause and which relate to the methods used by the revenue auditors to calculate the tax deficiency. For example the Taxpayer complains that 1) the auditors relied on hearsay to support their assessments; 2) Taxpayer did not have an opportunity to confront the third parties with whom the auditors spoke to get independent verification of information during the audit; 3) Taxpayer did not have an opportunity to cross-examine those same persons; 4) that the auditor did not have knowledge of PUC law; and

5) that the auditors' supervisor allegedly instructed the auditors to tax everything. These complaints do not prove a due process violation.

Due process is a flexible concept and the nature of the process that is mandated by that concept will vary depending on the particular circumstances of the case. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Where, as here, the interest at stake is a property interest there is no due process guarantee of a hearing before the property is taken, but only the guarantee of a hearing at some meaningful time. *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). When the case involves a taxing authority's power to assess and collect taxes, there is no right to a hearing before the taking occurs. *Phillips v. Commissioner,* 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931); *LAL v. West Chester Area School District,* 71 Pa.Commonwealth Ct. 236, 455 A.2d 1240 (1983).

In this case Taxpayer was afforded the opportunity to litigate his appeal before the Board and in a de novo hearing before this court on appeal. At both of these stages the rights that Taxpayer claims it was denied at the audit stage—confrontation, cross-examination, and hearsay protections—operated to protect Taxpayer from an improper assessment. Due process requires no more. Due process does not guarantee that auditors conduct their reviews under the rules of court, they must necessarily rely on out-of-court statements, and there exists no right to cross examine or confront witnesses until the matter comes to a hearing.

Finally, Taxpayer also argues that there is a due process violation since the presumption in favor of the propriety of the tax assessments deprives it of the opportunity to challenge the proof of the matter presumed, i.e., the assessment. This argument is without merit since Taxpayer has stipulated to the truth of the audit reports and the supporting schedules detailing the items of property and

services purchased by Taxpayer during the period covered by the audit. These reports detail the business transactions which provide the basis for the tax and would be sufficient to sustain the tax, unless an exemption were applicable. Since the Taxpayer has stipulated to the same matters that are the subject of the presumption, it may not now argue that the presumption is improper.

Instead of challenging the truth of the transactions underlying the tax, the Taxpayer has elected to assert its right to an exemption and a credit for taxes paid. The generally accepted rule is that a taxpayer must bear the burden of proving entitlement to a tax exemption. *United States v. Wells Fargo Bank*, 485 U.S. 351, 108 S.Ct. 1179, 99 L.Ed.2d 368 (1988); *Container Corporation of America v. Franchise Tax Board*, 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983). This principle is well established and does not offend due process. *Id.* As we noted above, Pennsylvania also follows this rule regarding exemptions. *Bruce & Merrilees Electric Company.* Since the facts which would warrant an exemption are more readily available to the Taxpayer, we see no due process problem in that rule.

Throughout these proceedings, the Court has endeavored to afford the Taxpayer every opportunity to prove its allegations. With each new offer of proof and each new development in the case, however, we became more and more convinced that this appeal was totally without merit. Yet, the opportunity to come forward with evidence and to prove his arguments was fully extended to Taxpayer. We are satisfied that Taxpayer has had the process it was due, and that the process has been fair. The Taxpayer's failure to conduct its affairs in an orderly manner and to keep adequate records has made its burden of proof impossible to sustain. The blame for that failure lies with the Taxpayer.

Accordingly, we affirm.

## ORDER

AND NOW, this 7th day of August, 1991, the order of the Board of Finance and Revenue in the above-captioned matter is hereby affirmed.

It is further ordered that unless Exceptions are filed within thirty (30) days from the date of this order, the Chief Clerk shall enter judgment in favor of the Commonwealth in the following amounts:

### 925 C.D. 1980

Use Tax—$216,741.26 plus appropriate interest

### 895 C.D. 1985

Use Tax—$770,495.79 plus appropriate interest and penalties .

### 1029 C.D. 1985

Fuel Use Tax—$81,728.57 plus appropriate interest and penalties

PELLEGRINI, J., did not participate in the decision in this case.