609 A.2d 862

**William FIORE, t/a Fiore Trucking and Contracting, Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 1992.

Decided May 12, 1992.

Reargument Denied June 10, 1992.

64

Henry G. Beamer, for petitioner.

Clinton G. Smith, Jr., Deputy Atty. Gen., for respondent.

Before CRAIG, President Judge, and DOYLE, COLINS, McGINLEY, SMITH, FRIEDMAN and KELLEY, JJ.

COLINS, Judge.

Before the Court are exceptions filed by William M. Fiore, t/a Fiore Trucking and Contracting (taxpayer) to an opinion and order of this Court dated August 7, 1991. *Fiore v. Commonwealth*, 141 Pa. Commonwealth Ct. 578, 596 A.2d 1147 (1991) (*Fiore I*). Therein the Court affirmed three separate orders of the Board of Finance and Revenue (Board) sustaining the use tax assessments imposed against taxpayer by the Department of Revenue (Department) pursuant to Section 202(b) of the Tax Reform Code of 1971 (Code).[1]

Taxpayer's appeals were heard de novo by the Court pursuant to Pa.R.A.P. 1571. The parties filed partial stipulations of fact and evidentiary hearings were held on February 4 and 5, 1991. The Court made the following findings of fact based on the partial stipulations of fact filed by the parties and credible

---

1. Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7202(b), which states in relevant part:

 There is hereby imposed upon the use, on and after the effective date of this article, within this Commonwealth of tangible personal property purchased at retail on or after the effective date of this article, and on those services described herein purchased at retail on and after the effective date of this article, a tax of six per cent of the purchase price....

evidence presented at the evidentiary hearings. We realize that these lengthy findings have been set forth previously in the Court's opinion in *Fiore I*; however, for purposes of clarity it is necessary to reiterate them here.

## FINDINGS OF FACT

1. Fiore Trucking & Contracting Co. is a sole proprietorship owned and operated by William Fiore, and engaging in the business of hauling property by motor vehicle.

2. William Fiore also owns and operates the following sole proprietorships:

 a. Diamond Excavating & Hauling, which has no apparent business activity;

 b. Diamond Fuel, which has no apparent business activity, but is operated only to keep the payroll records for Fiore Trucking & Contracting separate;

 c. Mill Industrial Service Co., which is engaged in the business of transporting property by motor vehicle; and

 d. Rolling Hills Village, which is engaged in the business of operating a mobile home park.

3. William Fiore is also the sole stockholder of Bill's Trucking, Inc., a Pennsylvania corporation engaged in the business of transporting property by motor vehicle.

4. In addition to the above-mentioned business entities, William Fiore also used other business names, among them, Fiore Construction, Diamond Excavating and others, but there was no indication of what business activities these entities pursued.

5. Bill's Trucking, Inc. is licensed as a motor vehicle common carrier under PUC [Public Utility Commission] License No. A81360.

6. William M. Fiore t/a Mill Industrial Service Co. is licensed as a motor vehicle common carrier under PUC License No. A75776. At the request of Mr. Fiore, that license was transferred from William Fiore individually to William M. Fiore t/a Mill Industrial Service Co. by order of the PUC dated August 20, 1974.

7. William Fiore holds Sales and Use Tax License No. 89–09117–2.

8. William Fiore d/b/a Rolling Hills Village holds Sales and Use Tax License No. 02–90776–2.

9. The Department conducted a field audit to examine Taxpayer's records for the period of January 1, 1975 through September 30, 1978, and that audit led to the assessment of additional taxes, penalties and interest at No. 925 C.D.1980 as follows:

| TAX ON: | AMOUNT |
|---|---|
| Liquid Fuel | $ 26,732.59 |
| Depreciable Equipment | 46,754.51 |
| Parts, Tires & Repair | 143,254.16 |
| Subtotal | $216,741.26 |
| Interest | 35,038.99 |
| Penalty | 52,609.86 |
| TOTAL | $304,390.11 |

10. The Department conducted a field audit to examine Taxpayer's records for the period of October 1, 1978 through December 31, 1981, and that audit led to the assessment of additional taxes, penalties and interest at No. 895 C.D.1985 as follows:

| TAX ON: | AMOUNT |
|---|---|
| Liquid Fuel | $ 81,412.21 |
| Depreciable Equipment | 283,114.16 |
| Parts, Tires & Repair | 265,336.08 |
| Mobile Homes | 18,674.76 |
| Truck Leasing | 182,670.07 |
| Subtotal | $ 831,207.28 |
| Interest | 226,626.01 |
| Penalty | 207,801.87 |
| TOTAL | $1,265,635.16 |

11. As a result of the field audit for the period of October 1, 1978 through December 31, 1981, a second examination of Taxpayer's record was conducted, and an additional assess-

ment of taxes, penalties and interest was made at No. 1029 C.D.1985 as follows:

| TAX ON: | | AMOUNT |
|---|---|---|
| Liquid Fuel | | $ 81,728.57 |
| | Subtotal | $ 81,728.57 |
| | Interest | 24,963.68 |
| | Penalty | 8,172.86 |
| | TOTAL | $114,865.12 |

12. The Taxpayer's administrative appeals brought relief of penalty abatement in the matter at 925 C.D.1980 and in the second use tax assessment the deficiency was reduced to "Use Tax—$770,495.79, plus appropriate interest and penalties." The Fuel Use Tax assessment was sustained in its entirety.

13. Taxpayer purchased the liquid fuel, depreciable equipment, parts, tires, repairs, mobile homes, airplane, and other property, and also leased certain trucks, all of which transactions provide the basis for the aforementioned tax assessments.

14. There is no credible evidence of record that Taxpayer is engaged in manufacturing nor that Taxpayer used the aforementioned assets directly in the manufacturing processes of another. Further, Taxpayer did not raise or preserve the question of the applicability of the manufacturing or resale exclusions before the administrative agency.

15. There is no credible evidence of record that Taxpayer remitted any taxes in connection with the aforementioned assessed goods or services which would entitle Taxpayer to a credit for taxes paid.

16. Taxpayer does not hold a PUC Common Carrier Certificate.

17. Taxpayer failed to segregate its business activities from other business enterprises owned and operated by William M. Fiore.

18. Taxpayer failed to keep adequate business records as required by statute and regulations.

The Court concluded that: (1) taxpayer was not entitled to the public utility exclusion from use and sales taxation;[2] (2) taxpayer was not entitled to the manufacturing exclusion;[3] (3) the auditors committed no impropriety in their method of preparing the audit report that formed the basis for the Department's conclusions and tax assessments; (4) taxpayer's allegation that the Commonwealth was permitted to raise new issues twenty days before the hearing and that taxpayer was denied the same right was a mischaracterization of the proceedings; and (5) there was no evidence that taxpayer suffered any due process violation during the proceedings. The Court affirmed the order of the Board and further ordered that unless exceptions were filed within thirty days, judgment shall be entered in favor of the Commonwealth in the following amounts:

### 925 C.D. 1980

Use Tax—$216,741.26 plus appropriate interest

### 895 C.D. 1985

Use Tax—$770,495.79 plus appropriate interest and penalties

### 1029 C.D. 1985

Fuel Use Tax—$81,728.57 plus appropriate interest and penalties

2. Section 201(o)(4)(B) of the Code provides an exclusion from use taxation for items of "machinery and equipment and parts therefor, and supplies" used directly in the "producing, delivering or rendering of a public utility service." This section further provides that the exclusion "shall not apply to any vehicle required to be registered under The Vehicle Code except those vehicles directly used by a public utility engaged in the business as a common carrier." 72 P.S. § 7201(o)(4)(B). At all times relevant to this proceeding, taxpayer never held a PUC certificate for common carrier service. Further, the Court rejected taxpayer's argument that it was entitled to the PUC exemption based on the fact that two of its separate entities, Bill's Trucking, Inc. and Mill Industrial Services, each held a PUC certificate for common carrier service.

3. Section 201(o)(4)(B) of the Code also provides that "machinery and equipment and parts therefor, and supplies" used directly in "[t]he manufacture of personal property" are excluded from the definition of "use" for purposes of taxation. 72 P.S. § 7201(o)(4)(B).

Taxpayer timely filed exceptions to the Court's opinion and order, which are now before the Court.

In addition, taxpayer presents the following issues for the Court's consideration: (1) whether the Department's auditor properly relied on double or triple hearsay as a factual basis for the assessment; (2) whether the Court erred by accepting as true the conclusions set forth in exhibits attached to the partial stipulation of facts; (3) whether taxpayer was denied procedural due process when the Commonwealth was permitted to raise new issues twenty days before the evidentiary hearing and taxpayer was denied that right; (4) whether the Court erred in finding that taxpayer failed to preserve the issue of its alleged entitlement to the manufacturing exclusion and furthermore, that even if the issue had been preserved, taxpayer's assertion that it was entitled to the manufacturing exclusion was unsupported by the record evidence; (5) whether taxpayer was denied procedural due process throughout these proceedings; and (6) whether the Court erred in failing to adopt taxpayer's proposed findings of fact, which taxpayer argues were supported by the evidence of record. We will address the issues seriatim and thereby address the corresponding exceptions as well, since the exceptions are, for the most part, subsumed within the issues raised. The remaining exceptions will be addressed thereafter.

 Taxpayer first argues that the second audit, covering the period October 1, 1978 through December 31, 1981, was based upon the following incidents, which constitute "unsupported multiple hearsay:" "(1) an unknown informant gathering information and communicating it to some other unknown person at United States Steel or to Mr. Skapik; (2) this unknown person supposedly informing Mr. Skapik, the auditor's supervisor, by telephone of the information; (3) Mr. Skapik, now deceased, writing this information and inserting it into the audit report and (4) the auditor of record, B. Kachmar, signing his name to this report as his own." Taxpayer's brief at p. 11. Additionally, taxpayer asserts in its Exception No. 11 that the Court improperly paraphrased the argument as alleging that the auditor's returns and reports were hear-

say when the actual issue raised concerned the "inclusion in the second audit report information inserted by a deceased supervisor, which information he allegedly received over the telephone from an unknown person of the U.S. Steel Corporation."

This argument pertains to certain alleged hearsay statements contained in the Narrative Report of Audit Findings prepared in conjunction with the field audit conducted for the period October 1, 1978 through December 31, 1981. The alleged hearsay information is emphasized in the following relevant portion of the report:

> While [taxpayer's accountant] claimed majority of activities to be public utility activity, he did not supply purchase orders from and corresponding sales invoices to customers, for whom public utility services were performed.

> In view of this, United States Steel Corporation was contacted and asked what type of activity the taxpayer performed for them. During 1979, 1980, 1981, practically all purchase orders and payments to Mill Industrial Service Company and William Fiore Contracting, were for the service of removal of industrial sludge or waste, including tar decanter sludge and sewer sludge.

> Therefore, even though taxpayer reported to the PUC ... approximately 53% of total receipts per cash receipts journal, ... as PUC activity, *it is obvious that the total amount reported to the PUC as PUC activity could not possibly be all PUC activity since a minimum of 90% of the U.S. Steel receipts were for waste disposal, which does not qualify for PUC activity....* Since the predominant use of the equipment is for non-PUC service, the equipment, parts, and repairs would be taxable.

Narrative Report of Audit Findings pp. 3–4 (emphasis added).

Taxpayer argues that because the language pertaining to U.S. Steel receipts was inserted into the narrative by a now deceased auditor, who obtained the information from an unknown person at U.S. Steel, it constitutes impermissible hearsay. According to taxpayer, the Department relied solely upon these hearsay statements as the basis for its imposition

of the additional assessments and, therefore, the assessments are unsupported and cannot stand.[4]

It is the Commonwealth's position that taxpayer has waived the hearsay argument, having not raised it previously in its petition for review or in the partial stipulation of facts to which the entire report was attached as Exhibit "A." This issue was first raised in taxpayer's brief in support of its petition for review and thus, was waived pursuant to Pa.R.A.P. 1571(h). However, the Court in *Fiore I* addressed the issue and determined that taxpayer's hearsay argument had no merit because (1) "Taxpayer stipulated to the audit reports and their supporting working papers," and thereby accepted the truth of those documents, which taxpayer may not now attack; and (2) the auditors were merely examining taxpayer's records to look for discrepancies and if taxpayer's records were not in proper form, taxpayer may not now "complain that the auditors based their audit findings on the errors or misstatements of its own records."

According to taxpayer, the facts stipulated do not support the Court's conclusions. Taxpayer argues that it clearly stipulated to the facts that the audit was conducted by the Department and that attached to the stipulation and marked Exhibit "A" were true and correct copies of the audit and appended papers including schedules and worksheets, but that it never stipulated to the accuracy of the figures or conclusions contained in those documents.

A partial stipulation of facts was filed for each of the three docketed matters forming this consolidated appeal. The relevant language appears either in stipulation No. 4 or 5 depending on the docket number and reads as follows:

An audit was conducted by the Department of Revenue of the books and records of William Fiore for the period October 1, 1978, through December 31, 1981. Attached hereto, made a part hereof, and marked as Exhibit "A", is a

4. To the contrary, Mr. Kachmar, auditor for the Department, testified that the additional assessments were also based upon the previous audit report, covering the period January 1, 1975 through September 30, 1978, and taxpayer's inadequate records.

true and correct copy of said audit and allied papers, including schedules and worksheets.

Further, stipulation No. 11 or 12, again depending on the particular docket number, reads as follows:

The parties hereto reserve the right to object to the relevancy or materiality of any Stipulation herein contained.

It is evident from the language of the above-quoted stipulations that the Court erred in finding that taxpayer stipulated to the truth or accuracy of the audit reports. Accordingly, taxpayer's Exception No. 2, addressing this error, is granted. However, we conclude that this was harmless error, since even if the Court were to disregard the alleged hearsay statements, taxpayer still did not meet its burden of showing entitlement to the public utility exclusion, as taxpayer produced no purchase orders or corresponding sales invoices to verify public utility services. The burden of accurate recordkeeping rests with the taxpayer. *See Air Engineers, Inc. v. Commonwealth,* 40 Pa.Commonwealth Ct. 472, 397 A.2d 854 (1979), *aff'd,* 494 Pa. 81, 428 A.2d 1341 (1981); 61 Pa.Code § 34.2; Section 271 of the Code, 72 P.S. § 7271. Accordingly, Exceptions Nos. 11, 21 and 25 are denied.

■ Taxpayer next argues that it was denied procedural due process when the Commonwealth was allowed to raise new issues up to and including twenty days before the evidentiary hearing and taxpayer was denied that same right. The thrust of taxpayer's argument appears to be that the Commonwealth was unfairly permitted to change the basis for its position that taxpayer was not entitled to the public utility exclusion. According to taxpayer, the Commonwealth initially argued that taxpayer was not entitled to the exclusion because it predominantly served one customer, and following a determination that that reasoning was erroneous, the Commonwealth then argued that regardless, the assessments were proper because of taxpayer's poor record keeping and because taxpayer was not certified as a common carrier.

■ The Commonwealth established its case by the audit reports, and it was then incumbent on taxpayer to prove

entitlement to an exclusion or credit. *Ernest Renda Contracting Company v. Commonwealth,* 94 Pa.Commonwealth Ct. 608, 504 A.2d 1349 (1986), *rev'd on other grounds,* 516 Pa. 325, 532 A.2d 416 (1987). Taxpayer has failed to satisfy its burden in this regard. Where, as here, a taxpayer presents no evidence to show that entities with which it contracted are public utilities or that the specific materials upon which the assessment was based were to be used directly in providing a public utility service, it cannot qualify for the public utility exclusion from use tax under Section 201. *Id.* We can find no evidence that taxpayer was unfairly treated in these proceedings or denied the right to fairly present its case. Accordingly, we deny taxpayer's Exceptions Nos. 14 and 22.

Taxpayer's fourth argument is that the Court erred in (1) determining that taxpayer failed to preserve the issue of its entitlement to the manufacturing exclusion and has waived that issue; and (2) determining that regardless, taxpayer failed to carry its burden of showing that it was engaged in manufacturing or that its assets were used directly in manufacturing. According to taxpayer, it proved entitlement to the exclusion via testimony of Mr. Herbert Wittman, former traffic manager at U.S. Steel, and Mr. Robert Corcoran, which testimony taxpayer asserts met his burden of proving that he had a public utility certificate, that he performed service as a common carrier, and that the waste material hauled at times was generated in the manufacturing process. We point out here that taxpayer's brief, in violation of Pa.R.A.P. 2132, fails to specifically reference those portions of testimony which it believes supports its assertions. "[I]t is incumbent upon the appellants, not the Court, to specifically correlate the allegations of error to the record and the exhibits." *Stefanovits v. Magrino,* 136 Pa.Commonwealth Ct. 290, 295, 583 A.2d 841, 843 (1990). Therefore, we are unable to address specifically the particular testimony that taxpayer argues is probative. Nevertheless, we can find no credible evidence of record to show that taxpayer was engaged in manufacturing or that taxpayer used its assets directly in the manufacturing process. Therefore, Exceptions Nos. 7, 13 and 20 are denied.

■ Taxpayer's fifth argument raises a plethora of procedural due process violations it claims to have occurred throughout these proceedings. Taxpayer's discussion of this issue in its brief is at best a maze of convoluted statements from which we are unable to conduct any meaningful review. The Court in *Fiore I* thoroughly discussed and disposed of taxpayer's due process complaints concluding that:

> [i]n this case Taxpayer was afforded the opportunity to litigate his appeal before the Board and in a de novo hearing before this court on appeal. At both of these stages the right that Taxpayer claims it was denied at the audit stage—confrontation, cross-examination, and hearsay protections—operated to protect Taxpayer from an improper assessment. Due process requires no more. Due process does not guarantee that auditors conduct their reviews under the rules of court, they must necessarily rely on out-of-court statements, and there exists no right to cross examine or confront witnesses until the matter comes to a hearing.... Throughout these proceedings, the Court has endeavored to afford the Taxpayer every opportunity to prove its allegations.... We are satisfied that Taxpayer has had the process it was due, and that the process has been fair. The Taxpayer's failure to conduct its affairs in an orderly manner and to keep adequate records has made its burden of proof impossible to sustain. The blame for that failure lies with the Taxpayer.

*Fiore I*, 141 Pa.Commonwealth Ct. at 589–90, 596 A.2d at 1152–53. We are unable to find any merit to taxpayer's general, all encompassing allegations of due process violations. Accordingly, the relevant exceptions raised, Nos. 23, 24, 26, 28 and 30, are denied.

■ Regarding taxpayer's final argument that the Court erred in failing to adopt its proposed Findings of Fact which, although presented in the Statement of Questions section, was never addressed in taxpayer's brief, suffice it to say that the Court is under no obligation to adopt proposed Findings of Fact. Accordingly, Exception No. 27 is denied.

Having addressed all the issues raised by taxpayer and the corresponding exceptions, we now address the remaining exceptions.

In Exception No. 1, taxpayer maintains that the Court erred in finding that the assessment was made against William Fiore, t/a Fiore Trucking and Contracting Company, when the assessment also erroneously included other entities of taxpayer, Mill Industrial Service Company, Bill's Trucking, Inc., and Rolling Hills Village. He asserts that receipts from U.S. Steel Corporation clearly showed that more than one entity was audited.

We remind taxpayer that pursuant to Section 236 of the Code, 72 P.S. § 7236, taxpayer bears the burden of proving that the assessments were improper. Taxpayers' bare allegation, without supporting evidence, is not sufficient to show that the audits were improper. *Bruce & Merrilees Electric Company v. Commonwealth,* 109 Pa.Commonwealth Ct. 101, 530 A.2d 994 (1987). Taxpayer's records admitted into evidence before the Court clearly provide support for the Court's finding of fact No. 17 that essentially taxpayer failed to keep separate records for its various business enterprises. Fiore himself testified that trucks used to perform work for U.S. Steel were owned by him individually but were used "in all facets of the operations of all of the companies." Notes of Testimony (N.T.), February 4, 1991, at 73–74. Later, when asked whether he could "identify by the number of the truck which entity the truck worked for," Fiore answered: "These numbered trucks worked for all entities at different times.... THE COURT: [A]re you saying, then, you cannot identify specifically what truck was working for the [Fiore Trucking and Contracting] company? [FIORE]: No." N.T., February 5, 1991, at 218–19. Taxpayer, clearly having failed to meet its burden of providing adequate documentation, cannot now complain that the assessments contain elements of those other enterprises, and Exception No. 1 must be denied.

Similarly, in Exception No. 3, according to taxpayer the Court erred in finding that the Department conducted a

"field" audit to examine taxpayer's records for the period January 1, 1975 through September 30, 1978 because there was testimony that the auditor did not know where taxpayer's place of business was located and that the auditor based his assessment solely upon a comparison of income tax records and public utility reports and not an actual audit of taxpayer's records. In addition to taxpayer's failure to cite to specific testimony, these allegations are unsupported by the record.

Again, we must stress that the burden is on the taxpayer to provide adequate records and supporting documentation. Section 271(a) of the Code provides that

[e]very person liable for any tax imposed by this article, or for the collection thereof, shall keep the records, render such statements, make the returns and comply with such rules and regulations as the department may, from time to time, prescribe regarding matters pertinent to his business. Whenever in the judgment of the department it is necessary, it may require any person, by notice served upon such person, or by regulations, to make such returns, render such statements or keep such records as the department deems sufficient to show whether or not such person is liable to pay or collect tax under this article.

72 P.S. § 7271(a). Further, the Department's regulations at 61 Pa.Code § 34.2(a)(1) provide that

[e]very person who sells or uses personal property or services shall be required to keep the following basic records:

(1) For purposes of accountability for use tax, taxpayers shall be required to retain all purchase invoices, requisitions, documents, and other records relating to their acquisition of tangible personal property and services. The purchaser shall maintain records showing that the tax was paid where the purchaser had paid the tax to his vendor, and where the purchaser has not paid tax to his vendor but has paid use tax directly to the Commonwealth. Where the purchaser has not paid tax in the above cited instances, he shall create and maintain records showing the reason he considered the purchase as nontaxable, and information

concerning the nature, use, price and dates of purchases and use of the property, from which it can be ascertained by the Department, with reasonable facility, whether or not use tax is due thereon and, if due, the amount of tax.

To the extent that taxpayer maintained adequate records and to the extent that those records were made available to the auditors, those records were utilized by the auditors in reaching a decision regarding the assessments. Accordingly, Exceptions Nos. 3, 8, 10, 18 and 19 are denied.

 Taxpayer argues in Exception No. 4 that the Court erred in its finding of fact No. 10 because that audit erroneously included mobile homes that taxpayer claims were not a part of Fiore Trucking and Contracting. Similarly, in Exception No. 6, taxpayer asserts that the Court erred in its finding of fact No. 13 because Fiore Trucking and Contracting was not involved in the purchase of mobile homes, in airplanes, and certain other property. Again, because of taxpayer's inadequate record keeping, these are bare assertions with no supporting evidence. Therefore, Exceptions Nos. 4 and 6 are denied. Exception No. 5, that the Court erred in Finding of fact No. 11 because there was "no second examination of Taxpayer's records" to support the additional assessment at 1029 C.D.1985 is simply not supported by the record and, therefore, must be denied. In addition, Exception Nos. 9, 15 and 17 must be denied inasmuch as it was clearly established that taxpayer held no PUC certificate at any time relevant to these proceedings. Exception No. 16 is denied as this Court is unable to ascertain which Finding of fact taxpayer is referring to. Lastly, Exception No. 12, that the Court erred in stating that "the Commonwealth has no duty to prove the validity of the tax assessment," must be denied. The courts have consistently held that the burden is on the taxpayer to prove that taxes were improperly assessed and that the Commonwealth is not required to prove facts necessary to sustain those assessments. *Commonwealth v. Beck Electric Construction, Inc.*, 32 Pa.Commonwealth Ct. 229, 379 A.2d 626 (1977), *aff'd in part, rev'd in part on other grounds*, 485 Pa. 604, 403 A.2d 553 (1979); *Anastasi Brothers Corp. v. Com-*

*monwealth,* 455 Pa. 127, 315 A.2d 267 (1974); *Bruce & Merri-lees Electric Company.*

Accordingly, the Court's order of August 7, 1991, affirming the order of the Board of Finance and Revenue is affirmed, and judgment shall be entered in favor of the Commonwealth as set forth in that order.

PELLEGRINI, J., did not participate in this decision.

### ORDER

AND NOW, this 12th day of May, 1992, Petitioner's Exception No. 2 is granted, Petitioner's remaining Exceptions Nos. 1 and 3–30 are denied, and the Court's prior order of August 7, 1991 is affirmed. The Chief Clerk is directed to enter judgment against Petitioner William Fiore, t/a Fiore Trucking and Contracting Co., and in favor of the Commonwealth of Pennsylvania, in the following amounts:

*925 C.D. 1980*

Use Tax—$216,741.26 plus appropriate interest.

*895 C.D. 1985*

Use Tax—$770,495.79 plus appropriate interest and penalties.

*1029 C.D. 1985*

Fuel Use Tax—$81,728.57 plus appropriate interest and penalties.